**Mary M. TUTHILL, Appellant,**

v.

**David F. TUTHILL, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 6, 2000.

Filed Nov. 22, 2000.

Michael J. Boyle, Pittsburgh, for appellant.

David S. Pollock, Pittsburgh, for appellee.

Before McEWEN, President Judge, and CAVANAUGH, KELLY, JOHNSON, HUDOCK, FORD ELLIOTT, JOYCE, MUSMANNO and LALLY–GREEN, JJ.

MUSMANNO, J.:

¶ 1 Appellant Mary M. Tuthill ("Wife") appeals from an Order requiring that alimony payments to her continue on a monthly basis despite the fact that her former husband, David F. Tuthill ("Husband"), received his retirement funds in lump sum distributions. We affirm.

¶ 2 The pertinent facts of this case are as follows. Wife and Husband were married in 1961 and divorced in 1978. On May 11, 1978, the parties executed a Property Settlement Agreement ("Agreement"). The Agreement required, *inter alia*, that Husband pay Wife alimony on a monthly basis.

¶ 3 At the time the parties entered into the Agreement, Husband was an attorney in the legal department of United States Steel, now USX, Corporation. In 1986, Husband became general counsel and secretary to Aristech Chemical Corporation ("Aristech"). Husband retired involuntarily from Aristech on April 30, 1995. He reached the age of 65 on July 29, 1995.

¶ 4 In May of 1995, Husband applied for retirement benefits from the Aristech Salaried Pension Plan. Husband elected to receive his benefits in a lump sum distribution and directed that the lump sum be rolled over into an Individual Retirement Account ("IRA"). Husband also elected to receive a lump sum distribution of funds from the Aristech Amended and Restated Supplemental Pension Plan, and those funds were paid directly to Husband. Husband chose to receive a lump sum distribution from the United States Steel and Carnegie Pension Plan, which he rolled over into his IRA. As a participant in two 401(k) savings plans, Husband elected, in April and May of 1995, to receive the funds in those accounts in a lump sum, which he also rolled over into his IRA.

¶ 5 Beginning in 1978, when the parties entered into the Agreement, Husband paid Wife $800.00 per month in alimony. That amount was adjusted over time, pursuant to the Agreement, as Husband's income increased. *See* Agreement, 5/16/78, Paragraphs 7.B., 7.D. After Husband retired in April of 1995, he began paying Wife monthly alimony payments of $1,549.90. That amount constituted 20% of the monthly retirement benefits that Husband would have received if he had not elected lump sum distributions of his retirement funds. Under the parties' Agreement, Husband was required, after his retirement, to pay Wife 20% of Husband's monthly retirement income. *See* Agreement, 5/16/78, Paragraph 7.E.

¶ 6 On September 12, 1995, Husband filed a Petition for Entry of Alimony Order, requesting that the trial court specifically order Husband to pay Wife $1,549.90 per month as alimony pursuant to Paragraph 7.E of the parties' Agreement. Wife filed an Answer to the Petition and New Matter, alleging that because Husband had taken his retirement funds in lump sums, she was entitled to a payment of 20% of those lump sums as alimony, rather than to monthly alimony payments of $1,549.90. Wife also asserted that she was entitled to an immediate payment of 20% of the 401(k) plan distributions to Husband.

¶ 7 After a hearing and the filing of stipulations, expert reports, and briefs, the trial court, per the Honorable Lawrence Kaplan, granted Husband's Petition and ordered that Husband pay $1,549.90 per month to Wife as alimony. The trial court also ordered that the parties submit to the court a proposed order specifying the

amount to be paid to Wife monthly from Husband's 401(k) funds and also setting forth the amount of arrearages due. Trial Court Order, 6/28/99. After the trial court entered that Order, Wife filed the present timely appeal.[1] Wife raises one issue on appeal: whether the trial court erred in interpreting the parties' Agreement as requiring Husband to continue to pay Wife alimony on a monthly basis rather than paying Wife 20% of the lump sum distributions that Husband had received.

¶ 8 On appeal from an Order interpreting a marital settlement agreement, we must determine whether the trial court committed an error of law or an abuse of discretion. *Laudig v. Laudig*, 425 Pa.Super. 228, 624 A.2d 651 (1993). "We do not usurp the trial court's fact-finding function." *Id.* at 653.

¶ 9 In interpreting a marital settlement agreement, contract principles apply. *Id.* Thus, the following principles are relevant:

The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. To accomplish this goal, each and every part of the contract must be taken into consideration and given effect, if possible, and the intention of the parties must be ascertained from the entire instrument.

*Id.* at 653 (citations omitted).

¶ 10 Paragraph 7 of the Agreement provides as follows:

A.  So long as the parties are married, Husband shall pay to Wife the sum of $500.00 monthly for the support and maintenance of herself and Andrew.

B.  If the parties are divorced, Husband shall pay to Wife the sum of $9,600.00 annually in monthly installments of $800.00 as alimony for her support and maintenance, subject to adjustment as hereinafter set forth in subparagraphs D and E hereof, which pay-

ments shall, however, continue only as long as Wife remains single.

C.  If the parties are divorced, Husband shall pay to Wife the sum of $3,600.00 annually in monthly installments of $300.00 as child support for Andrew's support and maintenance, subject to adjustment as hereinafter set forth in sub-paragraph D hereof, which payments shall, however, continue only until Andrew marries, attains 18 years of age or leaves Wife's general custody.

D.  Husband's earned income for 1977 was $55,573. It is the intention of the parties that the annual alimony and child support payments under sub-paragraphs B and C hereof shall be adjusted as Husband's earned income in the year 1978 and subsequent years is greater or less than $55,578.00, as follows:

1.  If Husband's earned income is greater than $55,578, Husband's annual alimony payments shall be $9600 plus 15% of such difference and Husband's annual child support payments shall be $3600 plus 5% of such difference.

2.  If Husband's earned income is less than $55,578, Husband's annual alimony payments shall be $9600 less 15% of such difference and Husband's annual child support payments shall be $3600 less 5% of such difference.

. . .

E.  When Husband reaches 65 years of age or upon Husband's involuntary retirement, whichever first occurs, the amount of monthly alimony payable thereafter by him to Wife, if not theretofor terminated in accordance with this agreement, shall automatically be adjusted to 20% of the monthly retirement income of Husband. For purposes of this Agreement, monthly retirement income is defined as the total amount of

---

1.  The parties previously appealed to the Superior Court, at No. 1781 Pittsburgh 1989, on issues related to the parties' Agreement. Those issues, however, were different from the issues raised in the present appeal.

monthly pension payments received by Husband from his former employers.

Agreement, 5/16/78.

¶ 11 Wife contends that the plain language of Paragraph 7.E requires that she receive 20% of the lump sum distributions received by Husband.

¶ 12 The intent of the parties to a written contract is contained in the writing itself. *Krizovensky v. Krizovensky*, 425 Pa.Super. 204, 624 A.2d 638 (1993). When the words of a contract are clear and unambiguous, the parties' intent is to be found only in the express language of the agreement. *Id.* at 642. The court must construe a contract as written and may not modify the plain meaning of the contract under the guise of interpretation. *Little v. Little*, 441 Pa.Super. 185, 657 A.2d 12, 15 (1995). Where the contract terms are ambiguous, however, the court is free to receive extrinsic evidence to resolve the ambiguity. *Krizovensky*, 624 A.2d at 642.

¶ 13 A contract will be found to be ambiguous only if it is fairly susceptible of different constructions and capable of being understood in more than one sense. *Id.* (citation omitted). It is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous. *Vogel v. Berkley*, 354 Pa.Super. 291, 511 A.2d 878 (1986). The fact that the parties have different interpretations of a contract does not render the contract ambiguous. *Id.* at 880.

¶ 14 In the present case, the language of Paragraph 7.B requires Husband to pay Wife alimony "in monthly installments." In Paragraph 7.E, the parties specified that Husband could modify the amount of monthly alimony paid to Wife after Husband retired. Thus, Paragraph 7.E indicates that the "amount of monthly alimony payable" to Wife "shall automatically be adjusted to 20% of the monthly retirement income of Husband" after Husband's retirement.

¶ 15 The language of Paragraphs 7.B and 7.E is clear and unambiguous. Those paragraphs clearly provide that Wife is entitled to receive, and Husband is required to pay, alimony on a *monthly* basis. Thus, the plain language of the Agreement demonstrates the parties' intent for Wife to receive alimony payments on a *monthly* basis.

¶ 16 The language of the Agreement is also unambiguous as to the duration of the monthly alimony payments. Paragraph 7.B clearly directs that the monthly alimony payments to Wife should continue as long as Wife does not remarry. Thus, according to the Agreement's plain language, as long as Wife remains unmarried, she is entitled to monthly alimony payments. In the present case, Wife remains unmarried.

¶ 17 The problem of interpretation in the present case is that Husband's "monthly retirement income," of which Wife is to receive 20% in monthly alimony payments, has been reduced to a lump sum by Husband's election. Thus, Husband does not receive "monthly retirement income," but instead possesses a retirement fund, in place of the monthly payments from his former employers. Wife asserts that the fact that Husband's retirement funds were taken in a lump sum requires that she be permitted to take an immediate 20% of those funds as a lump sum payment of Husband's alimony obligation.

¶ 18 However, as we have already determined, the plain language of the Agreement provides that Wife is entitled to *monthly* alimony payments. Wife's suggestion of a lump sum alimony payment would be inconsistent with the intent of the parties as expressed by the words of their Agreement. Thus, the problem before the trial court consisted of how to effectuate the parties' intent given the fact that Husband had elected to take his retirement income as a lump sum. The trial court determined that the logical effectuation of the parties' intent in those circumstances is that Wife should receive

 

monthly alimony payments from Husband's private retirement fund. The trial court further found that the amount of the monthly alimony payments to Wife should consist of 20% of the amount Husband would have received monthly if he had not elected to receive his retirement funds in a lump sum.

¶ 19 The trial court's interpretation of the Agreement allows effectuation of the parties' intent to provide Wife monthly alimony payments. The trial court did not abuse its discretion or make an error of law in that determination. Therefore, we affirm the trial court's Order.

¶ 20 Order affirmed.

¶ 21 McEWEN, President Judge, files a Concurring and Dissenting Statement.

McEWEN, President Judge, concurring and dissenting:

¶ 1 Since the author of the majority opinion has undertaken a careful scrutiny of the record, and provided a perceptive expression of rationale, I hasten to agree that the settlement agreement provides for wife to receive alimony based on pension income of appellee **only** in monthly installments and not in a lump sum distribution, but am unable to join in the opinion as I believe the cash distribution of $99,071.50 of March 20, 1995, made directly to appellee and not to an IRA, was clearly monthly pension income requiring he pay 20% of $99,071.50 [2] to appellant.

¶ 2 Since the other accounts, the $485,952.75, $440,261.83, $81,847.53, and $117,034.60 were rolled over to a qualified IRA account, those sums were not income to appellee.

¶ 3 The agreement contemplated and clearly provided for appellant to receive, in monthly installments, 20% of the income received **each month** by appellee.

**2.** This distribution was not rolled over to the IRA account and was ordinary income, tax-

¶ 4 Thus, I would require appellee to comply with the terms of the agreement which require periodic payments of 20% of his "monthly retirement income [derived from] pension payments."

¶ 5 I join in the opinion of my learned colleagues in all other respects.

able to appellee when received. Thus, it qualifies, plain and simply, as monthly income.