J-A04038-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TECH MET, INC.; ALFRED POZZUTO; G MONEY, INC. D/B/A NORTH PARK CLUBHOUSE; MR. MAGIC CAR WASH INC.; AND JOHN TIANO, ON THEIR OWN BEHALF AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| STRATEGIC ENERGY, LLC, | : : | |
| Appellee | : | No. 1058 WDA 2014 |

Appeal from the Order Entered June 4, 2014,
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s): GD-05-30407

BEFORE: BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED APRIL 14, 2015**

Tech Met, Inc., Alfred Pozzuto, G. Money, Inc. d/b/a North Park Clubhouse, Mr. Magic Car Wash, Inc., and John Tiano, on their behalf and on the behalf of others similarly situated (collectively Plaintiffs), appeal from an order which granted the motion for summary judgment filed by Strategic Energy, LLC (Strategic). We affirm.

The trial court aptly summarized the background underlying this matter as follows.

> This is a breach of contract class action brought against [Strategic] on behalf of all Pennsylvania commercial/business customers who entered into a Power Supply Coordination Service Agreement ("Service Agreement") with Strategic. Plaintiffs contend that they have been overcharged.

* Retired Senior Judge assigned to the Superior Court.

Strategic is an electricity supplier. Strategic purchases electricity in large blocks from Duquesne Light or other sources which it resells to customers pursuant to the terms and conditions of its Service Agreement with the customer. With limited exceptions, through the Service Agreement, Strategic guarantees its customers that the price for electricity will not exceed a specified amount (the price set forth on its Pricing Attachment) for five years.

Plaintiffs contend that Strategic has charged them amounts in excess of the amounts permitted by the Service Agreement. They seek to recover the difference between the amount paid for the electricity and the lesser amount permitted by the Service Agreement.

Strategic contends that its prices have never exceeded the amounts permitted by the Service Agreement. [Strategic filed a motion for summary judgment,] seeking dismissal of [P]laintiffs' Complaint on the ground that [P]laintiffs were never overcharged.

***

The prices that Strategic may charge its customers are governed by the following provisions of the Service Agreement:

**4. PSC Services Fee:**

The PSC Services Fee is 0.3 cents per kilowatt-hour for each kilowatt-hour of Electricity provided under this Agreement. The PSC Services Fee is included in the price paid by the Buyer.

**7. Price:**

The Price to be paid by Buyer for the Electricity and PSC Services provided hereunder during the Term of this Agreement shall not exceed that set forth on the Pricing Attachment below. All pricing terms are inclusive of applicable costs for Energy, Capacity, Transmission, Ancillary Services, Delivery Services, applicable taxes up to the Point of Delivery, overhead expenses as defined by Strategic Energy, and the PSC Services Fee.

### STRATEGIC'S INTERPRETATION

Strategic contends that under the Service Agreement [], the price it may charge shall not exceed the price set forth "on the Pricing Attachment[.]" Plaintiffs do not challenge the evidence showing that Strategic has never charged a price that exceeded that set forth on the Pricing Attachment. Thus, according to Strategic, summary judgment should be entered dismissing [P]laintiffs' Complaint.

### PLAINTIFFS' INTERPRETATION

According to [P]laintiffs, the price set forth in the Pricing Attachment is only a ceiling. The actual price, if it does not exceed the ceiling, consists of the sum of Duquesne Light's costs for energy, capacity, transmission, ancillary services, delivery services, applicable taxes up to the point of delivery, overhead expenses as defined by Strategic Energy and PSC Services Fee. Under this interpretation of ¶ 7, the maximum price that Strategic may charge is the amount of Duquesne Light's actual costs plus 0.3 cents per kilowatt-hour.

Trial Court Opinion, 6/4/2014, at 1-3 (footnotes omitted).

The trial court granted Strategic's motion for summary judgment. In so doing, the court determined that Strategic offered the only reasonable interpretation of the relevant contract provisions. The court offered, in part, the following rationale in support of its decision.

The first sentence of ¶ 7 permits Strategic to charge the amount set forth in the Pricing Attachment. The second sentence protects the buyer by explaining that the price set forth in the Pricing Attachment includes costs which Strategic incurs for energy, capacity, transmission, ancillary services, delivery services, applicable taxes up to the point of delivery, overhead expenses as defined by Strategic, and the PSC Services Fee.

Paragraph 4 describes the PSC Services Fee and reiterates that it is included in the price paid by the buyer.

Plaintiffs contend that the first sentence of ¶ 7 only establishes a maximum price that may be charged because ¶ 7 states that the price "shall not exceed that set forth in the Pricing Attachment below." (Emphasis added.)  According to [P]laintiffs, a contract uses the phrase "shall not exceed" only when there is another method for calculating price that may be less than the price set forth in the Pricing Attachment.

However, the Service Agreement cannot be read in the manner which [P]laintiffs propose unless the Service Agreement also provides for a lesser price under certain circumstances.  In other words, it could not have been the intention of the parties for the first sentence of ¶ 7 to be construed as only setting a maximum price if the Agreement does not also include a lesser price that shall be charged under some circumstances.

Plaintiffs apparently propose that the second sentence of ¶ 7 be read as follows:  "The price to be paid by the Buyer for the electricity and PSC services provided under the Service Agreement shall be the sum of the costs Strategic incurs for energy, capacity, transmission, ancillary services, delivery services, applicable taxes up to the point of delivery, overhead expenses as defined by Strategic Energy, and the PSC Services Fee."

However, this is not a reasonable construction of the second sentence of ¶ 7.  There is nothing in the language of ¶ 7 that in any way suggests that the price shall be based on Strategic's costs.  Thus, [the court is] left with a single method governing the price that may be charged.

If ¶ 7 consisted of only the first sentence, the only reasonable construction of the Agreement would be that Strategic is permitted to charge the amount set forth in the Pricing Attachment.  This is so because pricing is governed by ¶ 7, and this is the only provision governing the price to be paid. Where a second sentence is added that does not refer to the price to be paid, there is no difference between the two-sentence paragraph and the one-sentence paragraph.

A contract shall be construed to give meaning to each sentence in ¶ 7.  This is accomplished only if the second sentence is construed as describing costs that are included in the

price to be paid by the buyer as set forth in the Pricing Attachment. The language of the second sentence does not support any other construction that gives meaning to both sentences.

At least one of the Service Agreements between [P]laintiffs and Strategic, at ¶ 7, included a second paragraph which reads as follows:

If, during the term of this Agreement, regulatory changes create additional charges, not currently included in the Price, which Buyer would be subject to regardless of whether Buyer was receiving service from Strategic Energy, the Host Utility or any other provider of electric service ("Incremental Charge"), and Strategic Energy is unable to mitigate such [I]ncremental Charge, then Strategic Energy shall pass through such [I]ncremental Charge to be paid by Buyer above the Price.

Plaintiffs contend that the inclusion of this second paragraph supports [their] position that the price to be paid consists of the sum of the costs. However, this additional paragraph is equally consistent with an interpretation that the price to be paid shall not exceed that set forth in the Pricing Attachment, but Strategic may pass on an incremental charge to be paid by the buyer "above the Price."

Trial Court Opinion, 6/4/2014, at 3-5 (emphasis in original).

Plaintiffs timely filed a notice of appeal. The trial court directed Plaintiffs to comply with Pa.R.A.P. 1925(b). Plaintiffs timely filed a Pa.R.A.P. 1925(b) statement. The trial court complied with Pa.R.A.P. 1925(a). In their brief to this Court, Plaintiffs ask us to consider the following questions.

1. Did the trial court err in failing to hold that the [Service Agreement] pricing provisions were ambiguous and that their interpretation was therefore a jury question?

2. Did the trial court err in failing to hold that the contracts should be construed against [Strategic] as the drafting party?

Plaintiffs' Brief at 3 (unnecessary capitalization and suggested answers omitted).

We review orders granting summary judgment as follows.

> The standards which govern summary judgment are well settled. When a party seeks summary judgment, a court shall enter judgment whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense that could be established by additional discovery. A motion for summary judgment is based on an evidentiary record that entitles the moving party to a judgment as a matter of law. In considering the merits of a motion for summary judgment, a court views the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Finally, the court may grant summary judgment only when the right to such a judgment is clear and free from doubt. An appellate court may reverse the granting of a motion for summary judgment if there has been an error of law or an abuse of discretion.…

*Swords v. Harleysville Ins. Companies*, 883 A.2d 562, 566-67 (Pa. 2005) (citations omitted).

To the extent that we must interpret the Service Agreement in order to resolve this matter, we note the following principles of law.

> When faced with questions of contractual interpretation, the applicable standard and scope of review is well settled.

>> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision….

Moreover, we have stated:

> Determining the intention of the parties is a paramount consideration in the interpretation of any contract. The intent of the parties is to be ascertained from the document itself when the terms are clear and unambiguous. However, … where an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances.
>
> We first analyze the contract to determine whether an ambiguity exists requiring the use of extrinsic evidence. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. The court, as a matter of law, determines the existence of an ambiguity and interprets the contract whereas the resolution of conflicting parol evidence relevant to what the parties intended by the ambiguous provision is for the trier of fact.

> Where the language of the contract is ambiguous, the provision is to be construed against the drafter.

**_Keystone Dedicated Logistics, LLC v. JGB Enterprises, Inc._**, 77 A.3d 1,

6-7 (Pa. Super. 2013) (citations and quotation marks omitted).

The crux of Plaintiffs' position on appeal is that the trial court erred by

finding the pricing provisions of the Service Agreement to be unambiguous.

In support of their position, Plaintiffs first argue that the Service Agreement

is ambiguous because Plaintiffs and Strategic offered competing, reasonable

interpretations of that document.[1] Plaintiffs' Brief at 23-37. More

specifically, Plaintiffs contend that the Service Agreement can be interpreted

---

[1] For purposes of this argument, Plaintiffs are willing to assume that Strategic's interpretation of the Service Agreement is reasonable. Plaintiffs' Brief at 24 n.2. We further note that "[t]he fact that the parties have different interpretations of a contract does not render the contract ambiguous." **_Tuthill v. Tuthill_**, 763 A.2d 417, 420 (Pa. Super. 2000).

in such a way that Strategic only could charge Plaintiffs a price "equal to the sum of the items enumerated in the Price term, which include all of Strategic's costs plus its compensation, the PSC Services Fee." Plaintiffs' Brief at 25. Plaintiffs highlight, *inter alia*, that, consistent with the Service Agreement's definition of PSC Services, Strategic is required to "minimize cost in an effort to manage down the Price." **See** Complaint, 11/21/2005, Exhibit A, at ¶ 5 (defining "PSC Services" as "the services provided by Strategic [] in selecting the optimum mix of Electricity supplies [] to match the Facility load and selling any excess Electricity in order to maximize reliability and minimize cost in an effort to manage down the Price"). According to Plaintiffs, this obligation to manage down the Price comports with its interpretation of the pricing provisions of the Service Agreement.

In the alternative, Plaintiffs contend that the relevant contract provisions are ambiguous because they are obscure in meaning through indefiniteness of expression. Plaintiffs' Brief at 37-40. Ultimately, Plaintiffs believe that the ambiguity in the Service Agreement requires that it be construed against Strategic as the drafter.

Strategic argues that, "pursuant to the express language of the [Service Agreement], [Strategic] could charge for electricity anything up to, but *could not exceed*, the ceiling price identified by the pricing attachments to the contracts." Strategic's Brief at 19. We agree with the interpretation

of the Service Agreement put forth by Strategic and adopted by the trial court.

Paragraph 7 of the Service Agreement is the only provision in that document which speaks directly to the price Strategic could charge Plaintiffs. That provision does not limit Strategic to charging Plaintiffs only its costs plus the PSC Services Fee. Instead, the first sentence of paragraph 7 clearly and unambiguously caps the price Strategic can charge Plaintiffs at the price listed in the Pricing Attachment. Complaint, 11/21/2005, Exhibit A, at ¶ 7 ("The Price to be paid by Buyer for the Electricity and PSC Services provided hereunder during the Term of this Agreement shall not exceed that set forth on the Pricing Attachment below."). The second sentence of that paragraph simply provides a list of items included in the Price. *Id.* ("All pricing terms are inclusive of applicable costs for Energy, Capacity, Transmission, Ancillary Services, Delivery Services, applicable taxes up to the Point of Delivery, overhead expenses as defined by Strategic Energy, and the PSC Services Fee.").

The Service Agreement certainly allows Strategic to charge its customers a price lower than that listed in the Pricing Attachment. However, the only pricing limitation the Service Agreement places upon Strategic is that Strategic cannot charge its customers a price in excess of the price set forth in the Pricing Attachment. As the trial court emphasized, Plaintiffs cannot point to any evidence which demonstrates that Strategic ever

charged a client a price that exceeded a price listed in a Pricing Attachment. Thus, Plaintiffs have failed to produce evidence to support their claim that Strategic has overcharged them. Consequently, we hold that the trial court properly granted Strategic's motion for summary judgment. For these reasons, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/14/2015