J-S12015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ANN KRIS HANKEY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES D. HANKEY, JR. | : | |
| | : | |
| Appellant | : | No. 1643 MDA 2017 |

Appeal from the Order Entered September 27, 2017
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
912 C of 2003

BEFORE:  LAZARUS, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                **FILED APRIL 09, 2018**

James D. Hankey, Jr., (Husband) appeals from the order, entered in the Court of Common Pleas of Luzerne County, granting, in part, Ann Kris Hankey's (Wife) petition for special relief and directing Husband to pay Wife $24,975.00, the amount of pension benefits to which the court determined Wife was entitled.  After our review, we affirm.

The parties were married on December 31, 1992, and they divorced on October 1, 2003. The divorce decree incorporated the parties' property settlement agreement (PSA).  The PSA, dated September 25, 2003, provided that Wife would receive sixty percent (60%) of the marital portion of Husband's pension from the Pennsylvania State Employees' Retirement

System (SERS). The PSA stated that Wife's counsel "will prepare the appropriate Qualified Domestic Relations Order [QDRO]."[1]

Husband retired from the Pennsylvania State Police on October 25, 2014, and he began receiving SERS pension benefits beginning in November 2014. The parties, however, did not reach an agreement regarding an appropriate QDRO until 27 months later, on December 29, 2016, at which time a stipulated order was entered. That order was subsequently approved by SERS and, in February 2017, Wife began receiving her benefits.[2]

---

[1] A QDRO is an order "which creates or recognizes the rights of an alternate payee to receive all or a portion of the benefits payable to a participant under the plan. To be `qualified,' the order must contain certain required information and may not alter the amount or form of plan benefits." **Smith v. Smith**, 938 A.2d 246, 248 (Pa. 2009) (citation omitted). The actual qualifying of the domestic relations order is done by the employer's pension administrator. **Id.**

[2] The QDRO provides, in relevant part:

> 8. . . . The equitable distribution portion of the marital property component of Member's [Husband's] retirement benefit, as set forth in Paragraph Seven (7), shall be payable to Alternate Payee [Wife] and shall commence as soon as administratively feasible and SERS approves a Domestic Relations Order incorporating this Stipulation and Agreement, whichever is later.
>
> * * * *
>
> 10. . . . Alternate Payee's share of Member's retirement benefit shall be deducted from member's annuity payments by SERS and paid to the Alternate Payee pursuant to the provisions of this Stipulation and Agreement, beginning with the first full annuity payroll cycle after SERS' approval of this Stipulation and Agreement as a Domestic Relations Order.

With respect to the payments to which Wife was entitled from the date of Husband's retirement until February 2017, the parties were advised that SERS rules did not allow for retroactive payments. Consequently, Wife filed a petition for special relief on April 27, 2017. Following oral argument on the petition, the court granted Wife relief. The parties had stipulated that the marital portion of Husband's SERS pension was valued at $1,542.00 per month, and that since Wife was awarded 60%, she was entitled to $925.00 per month.[3] This is the amount Wife received following approval and entry of the QDRO. The trial court determined that Wife was entitled to this amount from the date of Husband's retirement, November 2014, until the date Wife began receiving the payments directly from SERS, in February 2017. Thus, the court awarded Wife $925.00 for 27 months, which amounted to $24,975.00.

Husband appealed. Essentially, Husband argues that Wife's right to payments commenced after entry of the QDRO, and not, as the trial court found, as of November 2014, when Husband began receiving his retirement benefits. He raises two issues for our review:

---

QDRO, 12/30/16. We note the one-day discrepancy in the filing date of the QDRO. The document is date-stamped on 12/30/16. *See* Stipulation and Agreement for Entry of Domestic Relations Order, 12/30/16. The court and counsel, state that the QDRO was filed on 12/29/16. *See* N.T., supra at 2, 11, 12, and 16.

[3] We note that the May 24, 2016 QDRO indicates Wife's marital share is $925.20 per month.

1. Did the trial court commit an abuse of discretion and err as a matter of law when it granted Wife's petition for special relief, which violated a QDRO and, after the petition was filed in excess of one hundred (100) days after the QDRO was entered without a showing of extrinsic fraud, lack of jurisdiction over the subject matter, a fatal defect apparent on the face of the record or some other evidence of extraordinary cause justifying intervention by the court?

2. Did the trial court commit an abuse of discretion and err as a matter of law by granting Wife's petition for special relief when Wife, not Husband, breached the PSA by taking thirteen (13) years to file an acceptable QDRO after the parties had been divorced, and the court granted additional benefits to Wife after Wife was being paid in accordance with both the PSA and the QDRO?

Appellant's Brief, at 4-5.

On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion. *Tuthill v. Tuthill*, 763 A.2d 417, 419 (Pa. Super. 2000) (en banc).

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is de novo and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations . . . . On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007) (citations omitted). Established Pennsylvania law states:

> When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they

- 4 -

have clearly expressed, for the law does not assume that the language was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

*Melton v. Melton*, 831 A.2d 646, 653–54 (Pa. Super. 2003) (internal citations omitted).

The PSA provides, in relevant part:

7. RETIREMENT ACCOUNTS

Husband began his employment with the Pennsylvania State Police on January 22, 1990; the parties were married on December 31, 1992 and separated on January 7, 2001. Therefore, ***Wife shall get sixty (60) percent of the marital portion of husband's retirement benefit from the Commonwealth of Pennsylvania.*** Wife's counsel will prepare the appropriate Qualified Domestic Relations Order.

Property Settlement Agreement, 9/25/03, at 3 (emphasis added).

Husband first claims the trial court "did not have jurisdiction to rescind and/or modify the [QDRO] of December 29, 2016, [and] did not have jurisdiction to make an award to [Wife] under 42 Pa.C.S.A. § 5505[.]" Appellant's Brief, at 5-6. He claims that since Wife's petition for special relief was filed beyond 30 days after the QDRO was filed, and since Wife has not established extrinsic fraud, lack of jurisdiction over the subject matter, a fatal defect apparent on the face of the record, or other evidence of extraordinary cause justifying intervention, the court had no authority to modify the order.

We agree with the trial court that section 5505 is not applicable here. The trial court did not modify or rescind the QDRO. The court granted Wife

relief pursuant to its broad enforcement powers set forth in section 3015 of the Divorce Code.

Section 3105(a) states that parties to an agreement regarding matters within the jurisdiction of the court under the Divorce Code, 23 Pa.C.S.A. § 3101 *et seq.*, whether or not the agreement has been merged or incorporated into the decree, may use a remedy or sanction set forth in the Divorce Code to enforce the agreement to the same extent as though the agreement had been an order of the court, unless otherwise agreed. ***Id.*** at § 3105(a). ***See Annechino v. Joire***, 946 A.2d 121, 123 (Pa. Super. 2008). ***See also*** 23 Pa.C.S.A. § 3101 (stating legislature's intent and objectives include effectuating economic justice between parties and insuring fair and just settlement of parties' property rights).

Further, section 3323(f) of the Domestic Relations Code provides:

> **(f) Equity power and jurisdiction of the court**.--In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this part and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

23 Pa.C.S.A. § 3323(f). ***See*** 23 Pa.C.S.A. § 3502(e) ("If, *at any time*, a party has failed to comply with an order of equitable distribution, as provided for in this chapter *or with the terms of an agreement as entered into between the parties,* after hearing, the court may, in addition to any other remedy available under this part, in order to effect compliance with its order: 1) enter

judgment[.]") (emphasis added). ***See also Romeo v. Romeo***, 611 A.2d 1325, 1328 (Pa. Super. 1992) (petitions for special relief not limited to period when action is pending; after final disposition of all matters in divorce action, party may need assistance of court in enforcing some portion of order); Pa.R.C.P. 1920.1 *et seq*. (rules of court governing actions in divorce or annulment of marriage); Pa.R.C.P. 1920.43 (petitions for special relief).

Here, while we do not ignore Wife's failure to take more prompt and effective action to secure her marital interest in the pension, both parties intimated at the hearing that the parties' prior counsel may have contributed to the delay. We note, too, that the trial court acknowledged on several occasions that the parties had gone back and forth for some time before reaching an agreement, and that the parties' present counsel had handled the case in an exemplary manner. Further, the parties recognized that there had been administrative delay as a result of an incorrect social security number. In any event, the trial court here determined that the PSA, not the QDRO, controlled. We agree.

The PSA plainly states that Wife is entitled to 60% of Husband's retirement benefit. Husband began receiving his retirement benefit in November 2014, and, therefore, Wife was entitled to her marital beginning on that date. It was not until the QDRO was ultimately approved and Wife began receiving her payments, in February 2017, that Wife realized she was not receiving the full benefit to which she was entitled, that is, 60% of Husband's retirement benefit as of his date of retirement. We agree with the trial court

that the absence or delay in the entry of a QDRO does not negate Husband's responsibility under the parties' agreement, and that the court had the authority to enforce the parties' agreement. Wife's right to her marital share of the pension existed prior to entry and approval of the QDRO. *See Prol v. Prol*, 935 A.2d 547, 556 n.2 (Pa. Super. 2007). The QDRO recognized that right; it did not create it. *Smith*, *supra*. We find no error or abuse of discretion. *Tuthill*, *supra*.

Husband also argues the trial court abused its discretion in failing to consider that Wife breached the PSA by waiting thirteen years to obtain a QDRO, when the PSA specifically states that it is Wife's counsel's duty to obtain the QDRO. In the alternative Husband argues the PSA was ambiguous and, therefore, the court should have considered extrinsic evidence, namely, the QDRO.

We note that the trial court specifically stated in its Pa.R.A.P. 1925(a) opinion that Husband should not be rewarded because of the negligence of Wife or her prior attorney. *See* Trial Court Opinion, 11/30/17, at 15. We agree. There is no support for Husband's contention that Wife's share would not become effective until after administrative approval of a QDRO by SERS. That determination is separate from the agreement the parties reached. Husband's argument that Wife should forfeit part of her equitable distribution award under these circumstances is contrary to the goal of effectuating economic justice.

Moreover, we find meritless Husband's argument that the PSA was ambiguous. The PSA clearly states that Wife is entitled to 60% of Husband's retirement benefit. There is nothing in the parties' agreement that would indicate Wife would receive payments only after a QDRO was approved by SERS or that Wife would forfeit payments as a result of delay in the entry and approval of a QDRO. Where, as here, the words of the contract are clear and unambiguous, the parties' intent is ascertained from the express language of the agreement. *Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004). Husband has failed to establish that the trial court erred or abused its discretion. *Tuthill*, *supra*. Accordingly, we affirm the trial court's order granting Wife's petition for special relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/09/18