J-A04041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DEBORAH KNOTTEK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL KNOTTEK | : | |
| | : | |
| Appellant | : | No. 1457 EDA 2020 |

Appeal from the Order Entered June 29, 2020
In the Court of Common Pleas of Bucks County Civil Division at No(s):
No. 2014-61253

BEFORE: STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED: JANUARY 22, 2021**

Paul Knottek (Husband) appeals from the June 29, 2020 order of the

Court of Common Pleas of Bucks County (trial court) denying his petition to

modify alimony (petition). He argues that there was a substantial change in

circumstances requiring recalculation of the alimony amount when Deborah

Knottek (Wife) retired and began receiving her pension and social security

benefits. We affirm.

**I.**

We glean the following facts from the certified record and the trial

court's opinion. Husband and Wife were married in 1972. On July 22, 2014,

prior to finalizing their divorce, they entered into a marital settlement

---

[*] Retired Senior Judge assigned to the Superior Court.

agreement (MSA) which divided their marital assets and set forth terms for alimony. When they signed the MSA, Husband was retired but Wife was still working. The MSA dictated that Husband would pay Wife $213 per month in alimony until she qualified for social security benefits. MSA, 7/22/14, at Paragraph 18. The initial $213 alimony amount was based on Wife's income at the time of $26,775 annually. *Id.*

After Wife began receiving social security payments, alimony would be adjusted to "40% of the net difference between Husband's monthly social security benefit and Wife's monthly social security benefit." *Id.* The MSA additionally provided that "[a]limony is modifiable based on a significant change of circumstances, including but not limited to a significant change in earnings of either party." *Id.* The MSA provided that alimony would continue for 14 years following the date of signing unless Wife remarried or cohabited or either party passed away. *Id.*

The MSA also specifically divided the parties' retirement funds in various accounts. For each account, the MSA set forth the value of the account on a specific date and stated that "[t]he parties further acknowledge and understand that the valuation date directly affects the value of their asset; therefore, the value of a particular asset may be worth more or less depending upon the agreed date of valuation." *Id.* Paragraph 8. Relevant to this appeal, the parties valued Wife's Public School Employees' Retirement System (PSERS) account at $1,783 as of June 30, 2013. *Id.* They agreed to divide

the account equally based on this valuation, and Husband's $892 net payment from that account was used to offset the equitable distribution payment Husband made to Wife for the marital residence. *Id.* Paragraphs 7-8.

A divorce decree was entered on December 12, 2014. Based on the terms of the MSA, the divorce decree specified that the MSA would be incorporated "without merger for purposes of enforcement." Decree, 12/12/14; MSA, 7/22/14, at Paragraph 26.

On January 10, 2020, Husband filed the instant petition on the basis that Wife's retirement and receipt of social security benefits constituted a significant change of circumstances under the MSA. Wife filed a response and the dispute was submitted to a Master. In addition to her social security income, Wife was receiving monthly payments of $429 from her PSERS pension account. Applying the plain language of the MSA, the Master recommended that Wife was entitled to $514 per month in alimony based on the net difference between her social security benefits and Husband's.

Husband subsequently filed a motion to *de novo* hearing in the trial court challenging the Master's conclusions. At oral argument, the trial court allowed Husband to orally amend his petition to argue that Wife's retirement and PSERS pension payments, in addition to her social security benefits, created a significant change in circumstances justifying recalculation of the alimony payment. The trial court then denied the petition, concluding that neither Wife's social security benefits nor her PSERS pension constituted a change in

circumstances not contemplated by the MSA. Husband timely appealed, and he and the trial court have complied with Pa.R.A.P. 1925.

## II.

Husband raises five interrelated issues on appeal: whether he established a significant change in circumstances to require a modification of alimony; whether the MSA's terms governing equitable distribution and alimony preclude him from arguing for a modification in alimony; whether his knowledge of Wife's future retirement at the time of signing the MSA precludes a finding of significant change in circumstances; whether unilateral mistake or under-valuation of Wife's PSERS account precludes a finding of significant change in circumstances; and whether his petition to modify alimony improperly attempts to re-litigate the balancing of interests in equitable distribution and alimony set forth in the MSA. Simply put, Husband argues that the trial court erred in interpreting the MSA to conclude that he had not established a significant change in circumstances when Wife retired and began receiving social security benefits and her PSERS pension. He requests that this court reverse the order denying modification and remand to the trial court for an evidentiary hearing to determine an appropriate alimony award.[1]

_____

[1] Our scope and standard of review is as follows:

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal

**A.**

MSAs are "private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained consideration." **Stamerro v. Stamerro**, 889 A.2d 1251, 1258 (Pa. Super. 2005) (citation omitted). "In Pennsylvania, the law of contracts governs a property agreement if the agreement is not merged into a divorce decree. . . . An agreement that is not merged stands as a separate contract, is subject to the law governing contracts and is to be reviewed as any other contract." **Bennett v. Bennett**, 168 A.3d 238, 245 (Pa. Super. 2017) (citation omitted).[2]

_____

from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is _de novo_ and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

**Rosiecki v. Rosiecki**, 231 A.3d 928, 933 (Pa. Super. 2020) (citation omitted).

[2] In contrast, an MSA that is merged into the divorce decree is subject to the provisions of the Divorce Code for purposes of modification and enforcement of alimony. **See Ballestrino v. Ballestrino**, 583 A.2d 474, 476 (Pa. Super. 1990); 23 Pa.C.S. § 3701(e).

"The paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. To accomplish this goal, each and every part of the contract must be taken into consideration and given effect, if possible, and *the intention of the parties must be ascertained from the entire instrument*." **Tuthill v. Tuthill**, 763 A.2d 417, 419 (Pa. Super. 2000) (*en banc*) (citation omitted; emphasis added). To ascertain the intent of the parties, the court first looks to the plain language of the contract. **Stamerro**, **supra**. If the language of the contract is clear and unambiguous, we need not consider extrinsic evidence of the parties' intent. **Id.** Thus, we do not look to individual provisions of a contract in a vacuum to interpret the agreement, but rather take into consideration all elements of the contract that represent the full sum of the parties' bargained-for exchange. **Tuthill**, **supra**. "Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements." **Rosiecki v. Rosiecki**, 231 A.3d 928, 933 (Pa. Super. 2020) (citation omitted).

**B.**

Husband's first three issues on appeal relate to whether he established a significant change in circumstances justifying a reduction in his alimony based on Wife's retirement and receipt of social security benefits and her PSERS pension. He points out that the MSA specifically allows for alimony to be modified "based on a significant change in circumstances, including but not limited to a significant change in earnings of either party." MSA, 7/22/14,

Paragraph 18. He contends that Wife's retirement, triggering her receipt of social security benefits and her PSERS pension, is a significant change in circumstances warranting modification of his alimony obligation.

Husband relies on **McFadden v. McFadden**, 563 A.2d 180 (Pa. Super. 1989), for the proposition that retirement constitutes a significant change in circumstances to justify modification of alimony. There, the parties entered into a stipulation and agreement that was merged into their divorce decree. **Id.** at 181. The agreement divided marital assets, set the husband's alimony obligation, and allowed for modification by court order. **Id.** We held that the alimony obligation was modifiable under the Divorce Code[3] based on proof of a substantial change in the husband's economic circumstances brought on by his retirement. **Id.** at 182. We concluded that the husband's retirement and resultant reduction in income was a substantial and continuing change in circumstances supporting modification under the Divorce Code. **Id.** at 182.

As noted by the trial court, **McFadden** involved an alimony award that was subject to the modification and enforcement provisions of the Divorce Code. **Id.** (relying on cases interpreting the term "change in circumstances" under 23 P.S. § 501 of the Divorce Code for court-ordered alimony payments); **see supra** note 2. Here, where the parties agreed to an alimony amount

_____

[3] **McFadden** refers to a prior version of Section 3701 of the Divorce Code then codified at 23 P.S. § 501.

through an MSA and the MSA did not merge with the divorce decree, the definition of a "significant change in circumstances" must flow from the terms of the MSA and the intent of the parties in negotiating the contract, not from the general provisions of the Divorce Code. *Tuthill*, *supra*; *Stamerro*, *supra*. Husband and Wife acknowledged this in the first provision of the MSA that states that they may have different rights or obligations under the Divorce Code than those negotiated in the MSA. *See* MSA, 7/22/14, Paragraph 1 ("The parties hereby, acknowledge, and understand that, under the "Divorce Code," that may have greater or lesser rights and obligations than they have agreed to in this [MSA].").

Based on the MSA as a whole, we must determine whether the parties intended Wife's receipt of social security benefits and her PSERS pension to constitute a significant change in circumstances. Wife's receipt of social security benefits cannot constitute a change in circumstances allowing the trial court to modify alimony, as this event was provided for in the terms of the MSA. Paragraph 18 explicitly sets forth the calculation for Husband's alimony payments that would take effect once Wife began receiving her social security benefits. The parties agreed that once Wife began receiving her social security benefits, alimony would be adjusted to 40% of the difference between her benefits and Husband's benefits. Because they agreed to this calculation in the MSA, they could not have also intended for Wife's receipt of social security

benefits to constitute a change in circumstances allowing the trial court to adjust the alimony amount as it saw fit.

Wife's PSERS pension, however, was not explicitly accounted for in the alimony provision of the MSA. The parties addressed the PSERS pension in Paragraph 8 of the MSA, where they divided all of their retirement accounts. There, the parties agreed "that Wife shall retain ownership of her PSERS retirement account which had a balance of $1,783 as of 6/30/13." MSA, 7/22/14, Paragraph 8. Husband was allocated $892 from the PSERS account, which was then used to offset the amount Husband paid Wife in his marital residence equitable distribution payment. *Id.* Paragraphs 7-8. The MSA further provided that "the valuation date [of the accounts] directly affects the value of their asset; therefore, the value of a particular asset may be worth more or less depending upon the agreed date of valuation." *Id.* Paragraph 8. In the same section, Husband and Wife agreed to divide three of Husband's retirement accounts via Qualified Domestic Relations Order (QDRO) so that Wife would receive monthly payments from Husband based on the monthly benefits he received from those accounts. *Id.*

Reading the provisions of Paragraph 8 and 18 together, the trial court concluded that

> [t]he parties formulated the alimony modification calculation in paragraph 18 bearing in mind the distribution and valuation of the PSERS pension in paragraph 8. Consequently, the [trial court] cannot interpret the provision for a "significant change of circumstance" to include Wife's receipt of PSERS pension (or the increased value of the pension) without nullifying the

- 9 -

> acknowledgements made in paragraph 8 and the equation enumerated in paragraph 18.

Trial Court Opinion, 9/28/2020, at 17. We agree. In negotiating the equitable distribution of their marital assets and Husband's alimony obligation to Wife, the parties agree that Wife "*shall retain ownership* of her PSERS retirement account." MSA, 7/22/14, Paragraph 8 (emphasis added). They mutually acknowledged that the value of the account could differ based on the valuation date, but agreed that for equitable distribution purposes, the value of the account was $1,783. *Id.* The parties were aware that they could divide any monthly payments from the PSERS account equally via QDRO, as they elected to do so with three of Husband's retirement accounts. Thus, the failure to divide Wife's future PSERS pension payments between the parties was intentional.

Reviewing the MSA as a whole, the parties agreed at the time of signing that Wife's PSERS pension, less an $892 payment to Husband, would remain her sole property following their divorce. Her subsequent receipt of those payments then cannot constitute a "significant change in circumstances" from the time the MSA was signed justifying a modification to the alimony amount. Because the events Husband offers as a significant change in circumstances were specifically contemplated and addressed in the MSA, the trial court did not abuse its discretion in holding that there was no significant change in circumstances warranting modification of alimony.

**C.**

Next, Husband argues without reference to legal authority that he did not waive his right to argue for a modification of alimony based on Wife's receipt of her PSERS pension by making a unilateral mistake in valuing the asset at the time he entered the MSA. *See* Husband's Brief at 14-16. Husband first argues that no evidence was submitted in the trial court to support a finding that he made a mistake in valuing the marital assets at the time of negotiating the MSA. He contends that the trial court erred in finding that his mistake could not justify a modification in alimony, as he never claimed and does not now claim that he made a mistake in entering the agreement. However, he argues that even if he did make a mistake in negotiating the agreement, that mistake would not "waive" his right to petition to modify alimony under the significant change in circumstances provision of the MSA. *Id.*

Husband appears to be referencing a portion of the trial court's opinion and order denying his petition to modify alimony.[4] Memorandum Decision and Order, 6/29/2020, at 4. In that opinion, the trial court held that Husband and

---

[4] The trial court also asked at oral argument whether Husband made a unilateral mistake in negotiating the MSA because he did not consider the monthly payments Wife would receive from her PSERS account upon retirement. Notes of Testimony, 6/12/2020, at 25. Husband responded that the modification provision accounted for the possibility of unforeseen additional income, and the concept of unilateral mistake was not discussed further. *Id.* at 25-26.

Wife had accounted for Wife's PSERS retirement fund and social security benefits when they formulated the alimony provision of the MSA. After concluding that both Husband and Wife were aware of how those assets would be distributed and considered in calculation of alimony, the trial court stated "[e]ven if we credit that Husband underestimated the value of one marital asset, such a unilateral mistake in the context of equitable distribution cannot be converted to a significant change in circumstances to justify reopening alimony." *Id.* Thus, the trial court concluded that Husband did *not* make a mistake in valuing the assets and agreeing to the terms of alimony provision. It simply noted in the alternative that if Husband were not aware of the full value of the PSERS account, he would still not be entitled to relief under contract principles governing unilateral mistakes. *Id.*

The trial court's denial of Husband's petition was based on contract interpretation principles as outlined in Section II.B, *supra*, not on a finding that Husband was mistaken in valuing the marital assets when he negotiated the MSA. Husband's claim that the trial court erred by finding a unilateral mistake is meritless.

**D.**

Finally, Husband argues in a single paragraph and without reference to legal authority that his petition was not an improper attempt to relitigate the equitable distribution of marital assets that the MSA represents. *See* Husband's Brief at 16-17. He contends that his petition was properly filed

under Paragraph 18 of the MSA, which allows for modification of alimony if there is a significant change in circumstances.

Again, this argument appears to be in reference to the trial court's initial opinion and order denying the petition. After concluding that Husband had knowingly assented to the division of property and terms for recalculation of alimony following Wife's retirement, the trial court stated "[l]ikewise, with regard to Wife's PSERS pension payments, we discern no basis to allow Husband to relitigate the balancing of financial and equitable interests that the [MSA] represents." Memorandum Decision and Order, 6/29/2020, at 4. In its opinion pursuant to Pa.R.A.P. 1925, the trial court expanded further that it was bound to interpret the MSA to give effect to all of its provisions and would not read the alimony provision in a manner that would nullify the bargained-for equitable distribution of the parties' retirement accounts. Trial Court Opinion, 9/28/2020, at 9, 13-18.

Contrary to Husband's assertion, the trial court did treat Husband's petition as a petition to modify alimony under the terms of the agreement. It simply denied the petition based on the contract law principles that apply to an unmerged MSA by examining the agreement as a whole to determine the parties' intent in allowing for alimony to be modified after a significant change in circumstances. *Tuthill*, *supra*; *Stamerro*, *supra*. This was not an error of law or abuse of discretion and no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/22/21</u>