624 A.2d 638

**Linda I. KRIZOVENSKY, Appellant,**

v.

**John M. KRIZOVENSKY, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 9, 1993.

Filed May 4, 1993.

Patricia Handy–Cooley, Asst. Dist. Atty., Doylestown, for appellant.

Joseph S. Britton, Langhorn, for appellee.

Before OLSZEWSKI, TAMILIA and FORD ELLIOTT, JJ.

OLSZEWSKI, Judge:

Linda Krizovensky ["wife"] appeals the order entered July 23, 1992, in the Court of Common Pleas of Bucks County. The court's order apportioned the post-retirement distribution of John Krizovensky's ["husband"] Civil Service Retirement System pension. On this appeal, wife argues that the court misinterpreted the parties' property settlement agreement and disputes the amount awarded to her pursuant to the court's order. We agree and reverse the trial court's order.

The parties negotiated a property settlement agreement before a Master in Divorce on February 22, 1991. The master advised the parties that the agreement made at that time was to be the final resolution of the equitable distribution claims from the marriage. The master also advised the parties that if they did not understand the agreement or had questions concerning it, they should ask the questions before the conference was over. Subsequently, the parties agreed to the distribution of husband's civil service retirement pension as follows: [1]

MR. BRITTON: In addition to the items previously identified, the parties recognize and agree that husband has a Civil Service Retirement System pension by virtue of his employment through the Naval Air Propulsion Center. With respect to this interest in the aforesaid pension, the parties agree that *the division will be as identified hereinafter. The coverture fraction will be defined as follows:*

1. Counsel for husband was assigned to read the agreement into the record.

*enumerator [sic] is 13.75, or thirteen and three quarters,*[2] *the denominator will be the entire length of the plan up to the time that the plan is in pay status. The coverture fraction shall then be multiplied by the basic benefit of the plan. Thereafter, wife's portion of the plan shall be fifty percent of the above mentioned number, and husband's portion of the plan shall be the remaining fifty percent of the above identified number.* When I refer to "the above identified number", I'm referring to the enumerator [sic] over the denominator, multiplied by the basic benefit of the plan. *The parties agree that the death of husband shall not terminate wife's portion of the said Civil Service Retirement System plan, and her portion shall be protected by a fully reduced survivor annuity.*

MS. COOLEY: Off the record.

(Discussion was held off the record.)

MR. BRITTON: In addition to what has been previously stated, in addition to getting fifty percent of what has been identified as the marital portion of the plan, husband will also get the balance of the plan benefits, anything which would be considered the non-marital portion of the plan. Wife, through her attorney, shall prepare a [Qualified Court Order] in order to implement the distribution as set forth herein. The Court of Common Pleas of Bucks County shall retain jurisdiction of the [Qualified Court Order] and the distribution of [the] pension as set forth herein.

N.T., 2/22/91 at 9–11 (emphasis supplied) (footnote added).

On May 7, 1991, the court entered a divorce decree and incorporated the property settlement agreement (above) which was finalized at the Master's hearing. Wife then prepared a proposed qualified court order ["QCO"] as directed by the master. For purposes of this appeal, the relevant parts of the proposed QCO are paragraphs 10 and 13. Paragraph 10 sets forth the coverture calculation as applied to the basic monthly retirement benefits collectable after husband retires.[3] Para-

2. This figure represents the length of the parties' marriage.

3. The following is the full text of paragraph 10:

graph 13 concerned the distribution of income if husband predeceases wife, stating:

> **Survivor annuities.** The former spouse is entitled to a Former Spouse Annuity. This *annuity shall be equal to the amount payable under the fully reduced annuity.* These survivor annuity rights of the former spouse shall consist of both pre-retirement and post-retirement survivor rights.

R.R. at 122a (emphasis supplied).

Husband refused to approve the proposed QCO because he disputed the meaning of the term "fully reduced annuity" as used in paragraph 13, the survivorship provision. Husband argued that the benefits provided to wife in paragraph 13 should be determined in accordance with the coverture fraction calculations in paragraph 10. Wife countered that the language in the proposed QCO was in compliance with the property settlement agreement, by which she was entitled to the full survivor's benefit. The Master in Divorce filed a

**Allocation of Retirement Benefits.** The former spouse is entitled to a portion of the employed spouse's basic retirement annuities. The retirement annuity of the former spouse shall be determined in the following manner:

*STEP I:* The CSRS shall determine the monthly annuity payable to the employed spouse at the time of his retirement. For purposes of this Order this annuity may be termed the basic monthly retirement annuity.

*STEP II:* The basic monthly retirement annuity determined in Step I shall be multiplied by a fraction, hereinafter referred to as the coverture fraction. The product (mathematical result) of this calculation shall be deemed the marital component of the employed spouse's basic monthly retirement annuity. The numerator and denominator of the coverture fraction, expressed in years and the fractional part thereof (carried to four decimal places) shall be as follows:

*Numerator:* For purposes of this Domestic Relations Order the numerator of the coverture fraction is: 13.7500 years.

*Denominator:* The total period of credited service of the employed spouse. This period shall be determined by the system when the employed spouse retires.

The product of multiplying the basic monthly retirement annuity by the above coverture fraction will be termed: "marital portion of the basic monthly retirement annuity."

*STEP III:* The marital portion of the basic monthly retirement annuity computed in Step II shall be multiplied by .5. The product of this computation shall be the monthly annuity benefit of the former spouse.

R.R. at 121a–122a.

report dated February 12, 1992. The master recommended that:

the Qualified Court Order submitted by wife's attorney should be entered as the order. The language in that order reflects the language in the [property settlement] agreement. The interpretation of that order is left to the plan administrator of the pension.

R.R. at 54a. Ultimately, the parties could not agree on the meaning of "fully reduced annuity" in paragraph 13. A hearing was held to resolve this question of interpretation on May 22, 1992.

Both husband and wife presented expert testimony concerning wife's entitlement to the survivor annuity provision. Wife's expert, William Troyan ["Troyan"] testified that the term "fully reduced survivor annuity," as used in the property settlement agreement, mandated that wife should receive 55 percent of the total retirement allowance payable at husband's death, the maximum spouse benefit possible. N.T., 5/22/92 at 10. He also stated that under the federal regulations, there are generally two survivor benefit options. One is a *"fully* reduced annuity" and the other is a *"partially* reduced annuity." *Id.* at 7. Both are specifically defined in the Code of Federal Regulations. *Id.;* C.F.R. § 831.603. A fully reduced annuity is the maximum available surviving spouse annuity, equal to 55 percent of the benefit payable at the employee's death. *Id.* at 8. A partially reduced annuity is some portion less than 55 percent collectable by the surviving spouse. *Id.* The terms are not interchangeable. *Id.* at 9. Troyan also testified that the terms of the property settlement agreement and the proposed QCO were entirely consistent. *Id.* at 11.

On cross-examination, Troyan testified that the monthly benefit and the survivor annuity were two distinct entities, and that the coverture fraction only applied to the basic monthly benefit. *Id.* at 17. Troyan testified that "fully reduced" are specific terms with only one meaning under the federal civil service system. *Id.* at 20. He also stated that it is possible to award less than a fully reduced survivor annuity, but that the apportionment or reduction must be accomplished by refer-

ence to a specific percentage so that the civil service retirement system could calculate the annuity. *Id.* at 24.

Husband's expert, Peter Lynn ["Lynn"], testified that "fully reduced survivor annuity" was not defined anywhere. *Id.* at 61. Nonetheless, he stated that he suspected that the correct term was "fully reduced annuity." *Id.* Lynn testified that "fully reduced annuity" was the maximum survivor spouse benefit. *Id.* at 62.

Husband testified that he never intended to give up his entire survivor annuity. He stated his impression that the coverture fraction would apply to the survivor benefit because he planned to marry again, and would want his second wife to have survivor benefits. *Id.* at 26, 30.[4]

As a result of the testimony at the hearing, the QCO was modified by the court on May 27, 1992. QCO paragraph 13 now states:

> 13. Wife is entitled to a former spouse annuity. This amount shall be equal to a portion of the amount payable under the fully reduced annuity. This portion shall be determined in accordance to the criteria established in paragraph 10 [calculation of a coverture fraction]. These survivor annuity rights of the former spouse shall consist of both pre-retirement and post-retirement survivor rights.

Order, 5/27/92 at 3. The trial court stated in its opinion that this language was the compromise result of husband's and wife's dispute regarding wife's entitlement to a survivor's annuity. The court reasoned that:

4. During husband's testimony, wife's counsel attempted to introduce evidence of wife's intentions in entering the agreement.
WIFE'S COUNSEL: Your Honer, if I may be heard just briefly. Mrs. Krizovensky compromised her position.
THE COURT: I understand what your position is. I understand that your argument would be that this was a specific agreement in exchange for the negotiations of certain other assets.
WIFE'S COUNSEL: That is correct.
THE COURT: If I start opening that up as to what I recognize to be a limited issue in dispute here I think that we are free to start opening up every original settlement agreement which I will not permit.
N.T., 5/22/92 at 39–40.

husband never intended to bargain away to his former
spouse the full amount of his Former Spouse Annuity,
including a portion which he had not yet earned. We
further conclude that the first paragraph of the language of
the agreement of February 22, 1991 [the property settle-
ment agreement], ... made it clear that Wife's portion was
to be limited by the coverture fraction.

Trial court opinion, 7/23/92 at 3–4. Wife filed objections to the
QCO, specifically to paragraph 13. Her exceptions were
denied and this appeal followed.

█ Wife presents three arguments in support of her re-
quest for reversal of the trial court's order. First, wife argues
that the language of the property settlement agreement clear-
ly provides her with a survivor annuity equal to a fully
reduced annuity. Second, wife argues that the trial court
erred in considering husband's testimony concerning his intent
at the time he entered the agreement and/or in disallowing
testimony concerning the negotiations leading up to the settle-
ment agreement. Third, wife argues that the lower court
erred by concluding that wife was entitled only to a portion
and not the entire fully reduced survivor annuity.

█ Property settlement agreements are to be considered
pursuant to general rules of contract interpretation. *D'Huy v.
D'Huy*, 390 Pa.Super. 509, 568 A.2d 1289 (1990). When
interpreting a contract, a court must determine the intent of
the parties and effect must be given to all provisions in the
contract. *Dept. of Transp. v. Manor Mines, Inc.*, 523 Pa. 112,
565 A.2d 428 (1989). It is firmly settled that the intent of the
parties to a written contract is contained in the writing itself.
*Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982). When
the words of a contract are clear and unambiguous, the intent
is to be found only in the express language of the agreement.
*Id.* Clear contractual terms that are capable of one reason-
able interpretation must be given effect without reference to
matters outside the contract. *D'Huy, supra.* Where the
contract terms are ambiguous and susceptible of more than
one reasonable interpretation, however, the court is free to

receive extrinsic evidence, *i.e.,* parol evidence, to resolve the ambiguity. *Id.* A contract will be found to be ambiguous: if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Z & L Lumber Co. of Atlasburg v. Nordquist,* 348 Pa.Super. 580, 585–86, 502 A.2d 697, 700 (1985) (citations omitted).

 Ambiguity within a contract may be latent or patent. A patent ambiguity appears on the face of the contract and is a result of defective or obscure language. *Id.* A latent ambiguity arises from collateral facts which make the meaning of a written contract uncertain, although the language appears clear on the face of the contract. *Id.* To determine whether there is an ambiguity, it is proper for a court to hear evidence from both parties and then decide whether there are objective indications that the terms of the contract are subject to differing meanings. *Id.* As a result of the court's finding that the parties' experts had diametrically opposite interpretations of the survivor's annuity provisions in the agreement, the court accepted extrinsic evidence.

 As stated above, husband's expert expressed his opinion that the term "fully reduced survivor annuity" was meant to indicate "fully reduced annuity." Both experts agreed that "fully reduced annuity" is a clearly defined term under the Code of Federal Regulations which endows a survivor spouse with the maximum collectable benefits. Therefore, "fully reduced annuity" was a defined term which should have been given effect. A contract is not ambiguous if the court can determine its meaning with a knowledge of the facts on which its meaning depends. *Vogel v. Berkley,* 354 Pa.Super. 291, 511 A.2d 878 (1986). The mere existence of differing

contractual interpretations by contracting parties does not render a contract ambiguous. *Id.* Nonetheless, the court in this case found an ambiguity in the contract because of the parties' differing perceptions of wife's share of the survivor's benefits.[5]

The operation of a coverture fraction upon the survivor's annuity, however, which is the interpretation chosen by the trial court, changes the meaning of the term "fully reduced annuity" to "partially reduced annuity." The Code of Federal Regulations defines "partially reduced annuity" as "the recurring payments under CSRS to a retiree who has elected less than the maximum allowable reduction in annuity to provide a current spouse annuity or a former spouse annuity." C.F.R. § 831.603. Thus, it is clear that the parties could have used the term reflecting the construction which husband urges this Court to adopt. The parties, however, chose to use the term "fully reduced annuity," which according to both husband's and wife's experts, has only one meaning. The construction urged by husband changes the meaning of a clearly defined term. We will not re-write a contract or give it a construction that conflicts with the plain, ordinary, and accepted meaning of the words used. *Litwack v. Litwack,* 289 Pa.Super. 405, 433 A.2d 514 (1981). In addition, we will not disregard a provision in a contract if a reasonable meaning may be ascertained from it. *Marcinak v. S.E. Greene School Dist.,* 375 Pa.Super. 486, 544 A.2d 1025 (1988). In construing a contract, every part of the agreement must be taken into account and given effect, if possible. *Id.; Boyce v. Smith–Edwards–Dunlap Co.,* 398 Pa.Super. 345, 580 A.2d 1382 (1990).

Moreover,

the unexpressed understanding of one of the parties to a contract as to its meaning is usually of no legal significance ... as it cannot be used to overthrow the effect of the intention actually made manifest in the contract.

5. The court stated that it believed "the definition of a fully reduced benefit is not in issue. What is in issue is whether or not [the survivor's benefits] should be further reduced by the word 'portion'...." N.T. 5/22/92 at 37.

4 Williston on Contracts § 606. We have held that where the parties' agreement has been reduced to a writing, the actual intent of the parties is not relevant unless it has been expressed in the writing. *Paull v. Pivar*, 161 Pa.Super. 233, 53 A.2d 826 (1947); *Warren v. Greenfield*, 407 Pa.Super. 600, 595 A.2d 1308 (1991). The terms of the agreement in this case were disputed, but they were not ambiguous. Since the terms were not ambiguous, the trial court erred in failing to give effect to the plain meaning of the term "fully reduced benefit" in paragraph 13 of the agreement. *Litwack, Vogel, Marcinak, supra.*

As a final note, we recognize that husband opposes wife's arguments because, he argues, to grant the relief requested by wife would be an impermissible re-writing of the parties' contract. Husband finds the following passage in the agreement to be dispositive of the parties' intent:

> in addition to what has been previously stated, in addition to getting fifty percent of what has been identified as the marital portion of the plan, husband *will also get the balance of the plan benefits, anything which would be considered the non-marital portion of the plan.*

N.T., 2/22/91 at 11 (emphasis supplied). Husband is correct in his assertion that a contract should be interpreted so as to give meaning to the entire agreement whenever possible. *Boyce, supra.* The first part of the property settlement agreement refers to the operation of the coverture fraction on the basic benefit provisions of husband's pension. The same mathematical procedure, however, was not applied in reference to the survivor's benefit. We fail to see how the passage set forth above, stating that husband "will also get the balance of the plan benefits," proves husband's argument that wife's construction impermissibly rewrites the contract. The paragraph set forth above refers specifically ["in addition to what has been previously stated ..."] to the coverture calculations concerning the basic plan benefits. In addition, to read this paragraph as husband urges would be to state that husband would collect the balance of the survivor's annuity. This construction is absurd. The survivor's benefits will not exist

until husband is deceased. Husband is unable to collect the balance of a survivor's annuity because he would be the decedent.

For the above stated reasons, the order of the trial court is reversed. Jurisdiction is relinquished.