**NALPAC LTD.**

v.

**NATIONAL MEDIA GROUP d/b/a National Media Corporation,**

v.

**Soft Screen Industries, Inc.**

No. CIV.A. 98–2625.

United States District Court,
E.D. Pennsylvania.

Jan. 14, 1999.

Frank G. Murphy, Fox, Rothschild, Obrien & Frankel, LLP, Philadelphia, PA, Julie Ann La Forge, Kahn & Freeman, PA, Phoenix, AZ, for Nalpac Ltd.

Cynthia A. Clark, Michael K. Coran, Klehr, Harrison, Harvey, Branzburg & Ellers, Philadelphia, PA, Timothy J. Thomason, Streich & Lang, PA, Phoenix, AZ, for National Media Group.

Richard L. Bazelon, Bazelon & Less, Philadelphia, PA, for Soft Screen Industries, Inc.

Soft Screen Industries, Inc., Montreal, Quebec, Canada, Joelvo, pro se.

### MEMORANDUM & ORDER

KATZ, District Judge.

*Factual Background*

National Media Corporation ("National Media") is the third-party plaintiff in this action against the third-party defendant, Soft Screen Industries, Inc. ("Soft Screen"). National Media and Soft Screen entered into a contract through which Soft Screen granted National Media exclusive manufacturing, marketing, and distribution rights to certain products that Soft Screen either controlled or developed. The contract provided that National Media would advance to Soft Screen sums against profit distributions, if any, that were payable to Soft Screen on future sales of the products by National Media. *See* Manufacturing, Marketing and Distribution Agreement § 5.4(a) (Ex. A. of Mot. for Summ. J.) ("Agreement"). Although National Media attempted to market the product, the effort was unsuccessful, and so, pursuant to contractual provisions that will be discussed below, National Media informed Soft Screen that it was terminating the contract.

National Media now moves for summary judgment on its third-party complaint against Soft Screen in which it requests repayment of the sums advanced to Soft Screen as well as indemnification of any liability it is found to owe to the primary plaintiff.[1] In addition, National Media moves for summary judgment against Soft Screen on Soft Screen's counterclaim for breach of contract against National Media.

*Discussion* [2]

These breach of contract claims are governed by Pennsylvania law. *See* Agreement § 21.6 (selecting Pennsylvania as fo-

---

1. National Media was initially sued by Nalpac, Ltd., for the payment of certain products that Nalpac claims to have delivered to National Media.

2. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Corp.*, 793 F.2d 509, 511 (3d Cir.1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the movant does not have the burden of proof on the underlying claim or claims, that movant has no obligation to produce evidence negating its opponent's case, but merely has to point to the lack of any evidence supporting the non-movant's claim. When the party moving for summary judgment is the party with the burden of proof at trial, and the motion fails to establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented. *See National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir.1992).

rum). "Under Pennsylvania law, a cause of action for breach of contract must be established by showing the existence of a contract to which the plaintiff and defendant(s) were parties, the essential terms of that contract, a breach of the duty imposed by the contract and damages as a result." *Cottman Transmission Sys., Inc. v. Melody,* 851 F.Supp. 660, 672 (E.D.Pa.1994). In analyzing a contract, the court must discern the intention of the parties, a determination that is usually made from the document itself so long as the language is clear and unambiguous. *See, e.g., Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 519 A.2d 385, 389–90 (Pa.1986); *see also Bethlehem Steel Corp. v. MATX, Inc.,* 703 A.2d 39, 42 (Pa.Super.1997) (same); *Krizovensky v. Krizovensky,* 425 Pa.Super. 204, 624 A.2d 638, 642 (Pa.Super.1993) (stating that it is "firmly settled that the intent of the parties to a written contract is contained in the writing itself"). A contract is ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense," *Hutchison,* 519 A.2d at 390 (citations omitted); when the contractual language is clear, the court should give effect to that language without reference to matters outside of the contract. *See Krizovensky,* 624 A.2d at 642; *Fort Washington Resources, Inc. v. Tannen,* 846 F.Supp. 354, 358 (E.D.Pa.1994) (stating that when a written agreement is the entire agreement, and the terms are unambiguous, it must be enforced as written). The court, as a matter of law, determines the existence of any ambiguity and interprets the contractual provisions. *See Hutchison,* 519 A.2d at 390; *St. Paul Fire and Marine Ins. Co. v. Lewis,* 935 F.2d 1428, 1431 (3d Cir.1991).

With these considerations in mind, the court will address each aspect of the summary judgment motion before it.

*Soft Screen's Counterclaim against National Media*

In Soft Screen's counterclaim against National Media, it asserts that National Media breached its contract with Soft Screen by failing to market the product in question. Specifically, Soft Screen states that National Media had the "exclusive right" to manufacture the product and to advertise and pro-

mote the product. *See* Counterclaim by Third Party Defendant Soft Screen Industries, Inc. ¶ 5. Soft Screen claims that National Media breached this agreement by failing to "consult with Soft Screen about advertising, promotion, marketing, sale and/or distribution of the said Products, and failed to devote significant time, money and other resources to these undertakings." *Id.* ¶ 6.

■ Soft Screen's claims regarding failure to market the product must fail because of the specific language in the agreement between Soft Screen and National Media and because of the record evidence provided by National Media. First, the contract between Soft Screen and National Media includes a clause stating that National Media's failure successfully to market the product or indeed its decision not to exercise its rights at all, is not a breach of contract:

> The parties acknowledge that National, upon consultation with Licensor, intends to initiate marketing and distribution of the Products via airings of the Program, as that term is defined in Section 3.1 hereof. During the term hereof, National may exercise all or such other of the License Rights as it shall determine in the reasonable exercise of its business judgment. In the event that Licensor wishes to market and distribute the Products via any means or media which National is not pursuing, then the parties shall negotiate in good faith the terms under which such rights may be exercised by Licensor. Failure by National to exercise any particular right granted hereunder shall not constitute a breach of this Agreement.

Agreement § 1.3; *see also id.* § 1.4(b) (stating that failure to meet minimum profit requirements does not constitute a breach though it may be grounds for terminating the contract). Using the framework required by Pennsylvania law, the clear language of the contract indicates that National Media breached no duty by whatever method it used to sell the product: according to the contract, National Media had the option of choosing to promote or not promote the product in a particular way. If Soft Screen was dissatisfied with National Media's ef-

forts, it had the duty to negotiate for alternative arrangements.

National Media also stresses that even assuming that there was a duty that could be breached by National Media regarding a particular type of promotion, the contract states that if National terminated the contract, neither party would be able to bring a breach of contract claim in such a circumstance:

> National may also terminate this Agreement at any time upon 30 days written notice to Licensor. In the event of such termination, neither party shall have any claim as against the other arising from the termination (including, without limitation, any claim based on delay, lost profits, or loss of opportunity), all such claims having been deemed waived, and each party shall be free thereafter to pursue its respective business interests without regard to any of the obligations set forth in this Agreement.

Agreement § 14.1(e). The clear language of the contract itself governs precisely the situation contemplated in Soft Screen's counterclaim and determines that such actions are not a breach of contract. Consequently, Soft Screen's counterclaim against National Media regarding the failure to promote will be dismissed with prejudice.

### National Media's Claim for Recoupment

■ National Media next requests summary judgment on its claim that Soft Screen be required to reimburse it the advance issued by National Media under the contract. The contract between National Media and Soft Screen explicitly provides that if National sent Soft Screen written notice of its intent to terminate the agreement in accordance with the previously cited sections,

> National shall recoup the Advance by means of a credit against Licensor's share of Net Profits hereunder in an amount not to exceed $10,000 per month, beginning with the thirteenth month after the Advance Month and continuing until the entire Advance has been recouped in full. If this Agreement is terminated prior to the entire Advance being so recouped, then Licensor shall pay to National the entire unrecouped portion of the Advance

promptly upon National's demand therefor.

Agreement § 5.4. As described previously, National Media did terminate the contract in accordance with its terms as indicated by the termination letter and by Ms. McComb's affidavit. *See* Aff. of Frances McComb; *id.* Ex. B. (termination letter). The clarity of the contractual provision combined with the evidence indicating that Soft Screen has not yet paid back the advance it received means that National Media must also prevail on this aspect of its summary judgment motion. Judgment shall be entered against Soft Screen requiring repayment of any and all portions of the advance it has not yet refunded.

### National Media's Claim for Indemnification

National Media's summary judgment motion also requests that Soft Screen be ordered to provide indemnification for any sums for which National Media is ruled to be liable to Nalpac. Again, the clear contractual language controls this issue, as Pennsylvania law states that contractual obligations to indemnify are evaluated in accordance with the ordinary rules of contract interpretation described previously. *See, e.g., Kerrigan v. Villei,* 22 F.Supp.2d 419, 426 (E.D.Pa.1998). The contract provides that the

> Licensor shall defend, indemnify and hold harmless National ... from and against any and all Claims which any of them may incur or become obligated to pay arising out of or resulting from ... the breach of Licensor of any of its representations, warranties, covenants, obligations, agreements or duties under this Agreement.

Agreement § 12.2(a).

■ Nalpac is suing National Media for payment of certain products that Nalpac sold. National Media's submissions to the court indicate that Soft Screen's duty to indemnify National Media for this cause of action may arise in one of two ways. First, according to the Agreement, Soft Screen is obligated, upon the termination of the contract, to repurchase any inventory possessed by National Media:

> With respect to all inventory of the Products remaining in National's hands after

the exercise of the retained rights under Section 14.2(a), Licensor shall, at National's election, either repurchase such inventory from National at National's cost or permit National to dispose of such inventory in such manner as National may determine. Agreement § 14.2(b). The termination letter sent by National Media included a demand that Soft Screen repurchase "30,000 units of the Soft Screen product which we will release to you upon your payment of the Nal Pac's invoice in the amount of $156,000 (Canadian), a copy of which is attached to this letter." McComb Aff., Ex. B. To the extent that National Media's liability to Nalpac, if any, stems from the inventory that Soft Screen was contractually obligated to repurchase,[3] summary judgment will be granted in favor of National Media and against Soft Screen.

National Media also suggests that Soft Screen diverted products directly from Nalpac and that National Media never received certain products that are the basis of Nalpac's suit against National Media. Although National Media states that Soft Screen has conceded this point, Soft Screen's pleadings deny that it diverted any products and suggests instead that National Media actually owed money to Soft Screen for supplying payment and parts for a third party to finish certain products. That is, Soft Screen agrees that it received some products, but it provides an explanation of the circumstances that is factually quite different from that of National Media. *See* Answer, Affirmative Defenses and Counterclaim by Third Party Defendant Soft Screen Industries, Inc. ¶ 12. Neither side has produced any evidence on this point, and the court is left with the conflicting complaint and answer buttressed only by the memorandum of law provided by National Media. Because National Media has not met the required burden of proof for a summary judgment motion, it would be inappropriate to grant summary judgment based on this theory, as there is no way for the court to resolve the conflicting, factual descriptions of the occurrence. The court relies instead upon Soft Screen's contractual obligation to repurchase the inventory held by National Media as the basis for the duty of indemnification.

An appropriate order follows.

### ORDER

**AND NOW,** this 14th day of January, 1999, upon consideration of Defendant/Third–Party Plaintiff National Media Corporation's Motion for Summary Judgment Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure as to (1) National Media's Amended Third–Party Complaint against Third–Party Defendant Soft Screen Industries, Inc., and (2) Soft Screen Industries, Inc.'s Counterclaim against National Media, and the response thereto, it is hereby **ORDERED** that National Media's Motion is **GRANTED** as follows:

(1) Judgment is entered in favor of National Media and against Soft Screen on National Media's Third–Party Complaint against Soft Screen with respect to National Media's claim for reimbursement of any contractual advances, up to $70,000.00, that have not yet been paid;

(2) Judgment is entered in favor of National Media and against Soft Screen on National Media's Third–Party Complaint against Soft Screen with respect to National Media's claim for indemnification for all sums that National Media is or may be adjudged liable to Plaintiff Nalpac, Ltd., to the extent that Soft Screen failed to repurchase inventory from National Media;

(3) Judgment is entered in favor of National Media and against Soft Screen on Soft Screen's Counterclaim against National Media; and

(4) Soft Screen's Counterclaim against National Media is dismissed with prejudice.

---

**3.** The duty to indemnify arises only after the party with the right to require indemnification of another is obligated to pay money to a third party. *See Kerrigan,* 22 F. Supp.2d at 426–27.