J-A25007-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ELIZABETH ROBINSON, M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MADELINE C. WEISER, M.D., P.C. | : | No. 1242 EDA 2018 |

Appeal from the Judgment Entered April 16, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): No. 2011-27436

| | | |
|---|---|---|
| ELIZABETH ROBINSON, M.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MADELINE C. WEISER, M.D., P.C. | : | |
| | : | |
| Appellant | : | No. 1284 EDA 2018 |

Appeal from the Judgment Entered April 16, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2011-27436

BEFORE: PANELLA, J., DUBOW, J., and KUNSELMAN, J.

MEMORANDUM BY DUBOW, J.: **FILED JUNE 27, 2019**

In these consolidated cross-appeals, Elizabeth Robinson, M.D.

("Employee"), and Madeline C. Weiser, M.D., P.C. ("Employer"),[1] appeal from

_____

[1] Employee named only Employer, Madeline C. Weiser, M.D., P.C., as a defendant in this action. Madeline C. Weiser, M.D. ("Dr. Weiser") is the president and sole shareholder of Employer. As discussed *infra*, on June 20, 2014, the court denied Employee's request to add Dr. Weiser individually as an additional defendant. Thus, Dr. Weiser did not participate in this action individually.

the Judgment entered on April 16, 2018, in the Montgomery Court of Common Pleas following a non-jury trial in this action arising from a breach of an employment contract. After careful review, we affirm.

On May 29, 2007, Employee, a pediatrician, executed a written employment contract (the "Contract") with Employer. Dr. Weiser alone prepared the Contract. The Contract provided, *inter alia*, that Employee would work for Employer for a three-year term commencing on June 1, 2007. Employer agreed to pay Employee a set salary for the first two years of the contract term. In the third year—June 1, 2009 to May 31, 2010—Employer agreed to pay Employee "the greater of $135,000 or 49% of [Employee's] 'net collected receipts with the cost of malpractice insurance deducted.'" Contract, 5/29/07, at 1. Notably, the Contract did not define "net collected receipts," nor did it include language indicating how the parties would allocate the expense of purchasing vaccines administered by Employee.

Relevant to the instant appeal, Employer initially paid Employee a $135,000 salary for the third year of her contract term.[2] Employer's records

---

[2] Understanding that Employee's compensation for year three would be at least $135,000, and, depending on Employee's productivity, might be more than $135,000, in year three Employer paid Employee a "salary" of $135,000 over the course of the year so that Employee would have "cash flow. . . to pay bills[, etc.]" N.T., 9/7/17, at 137-38.

- 2 -

reflected that Employee's total receipts[3] in the third year of her contract were $424,478.03.[4] The cost of Employee's vaccines in the third year of the contract term was $132,415.62, and the cost of Employee's malpractice insurance for the third year of the contract was $13,147.

Employer calculated Employee's third-year salary by subtracting the cost of the vaccines Employee administered and the cost of Employee's malpractice insurance premium from her total receipts, and then multiplying by a factor of 49%. Thus, Employer calculated that Employee's third year salary was $136,668.55.

Because Employer had already paid Employee a third-year salary of $135,000, at the conclusion of the third year, Employer paid Employee an additional $2,468.55. This figure represented the payment of an additional $1,668.55 owed to Employee under Employer's interpretation of 49% of Employee's "net collected receipts"—the difference between $136,668.55 and $135,000—as well as reimbursement of $810 that the parties agreed Employer had improperly deducted from the amount paid to Employee.[5]

_____

[3] Employee's total receipts is comprised of the money actually collected from insurance companies and patient co-pays by Employer in exchange for services performed by Employee.

[4] The record also reflects that on October 31, 2009, Employee administered at least 25 H1N1 flu vaccines to patients who each paid a $20 co-pay.

[5] Employer reimbursed Employee $810 based on Dr. Weiser's mischaracterization of a "Verruca-Freeze" chemical cauterization as a vaccine. N.T., 9/6/17, at 48, 55.

After Employer paid Employee, Employee disagreed with Employer's interpretation of "net collected receipts" and claimed that Employer had miscalculated the amount of compensation due to her for her third year of employment.

On September 30, 2011, Employee commenced this action against Employer claiming that Employer had breached the terms of the Contract by failing to compensate her fully for the third year of her employment. In particular, Employee disagreed with Employer's treatment of the cost of vaccines administered by Employee and its payment of her medical malpractice insurance premium. Employee sought damages for Breach of Contract and a violation of Pennsylvania's Wage Payment and Collection Law (the "WPCL"), 43 P.S. §§ 260.1-260.45. On September 4, 2014, Employee filed an Amended Complaint.

On November 14, 2014, Employer filed an Answer. Employer also filed a Counterclaim alleging that Employee had breached a covenant not to compete.[6]

A non-jury trial took place on September 6, 2017, and September 19, 2017. Employee argued at trial that the Contract term "net collected receipts" meant the total receipts collected by Employer from insurance companies and patients—$424,478.03. Employee testified that the parties did not have an oral or written agreement to deduct the cost of vaccines from the amount

---

[6] At trial, Employer withdrew its claim for damages due to the alleged breach of the covenant not to compete.

Employer collected in order to calculate Employee's "net collected receipts." She further testified that she never would have agreed to include deduction of vaccines from her "net collected receipts" as part of a Contract with Employer.

With respect to the treatment of her medical malpractice insurance payment, Employee testified that she did not have a particular understanding of whether Employer's cost would be deducted before or after applying the 49% factor.

Employer claimed that, even though not stated in the Contract, "net collected receipts" included the cost of vaccines, which should be deducted from Employee's total receipts before the 49% factor is calculated to determine whether Employee's salary exceeded $135,000 in her third year of employment. Dr. Weiser testified that she told Employee before she executed the Contract that Employer would charge its vaccine costs to Employee. Dr. Weiser also testified that the parties agreed that Employer would deduct the cost of Employee's medical malpractice insurance premium after determining Employee's 49% portion of her net collected receipts.[7] Dr. Weiser testified

---

[7] Our review of the record indicates that there is a substantial inconsistency between Weiser's testimony that Employer would deduct the cost of Employee's medical malpractice insurance premium **after** determining Employee's 49% portion of her net collected receipts and the method by which Employer actually calculated Employee's compensation. Contrary to this testimony, Employer actually calculated Employee's compensation by subtracting Employee's vaccine costs **and** medical malpractice insurance premium her collected receipts **before** applying the 49% factor, as set forth in detail **supra**.

that she did not seek to include other categories of expenses in the "net" calculation because they are not easily allocable among Employer's doctors.

On October 20, 2017, the court issued its Findings and Decision in Employee's favor. Relevantly, the trial court concluded that the term "net collected receipts" was ambiguous and construed it against Employer. It found Employee's testimony credible that the parties had not agreed, either orally or in writing, to deduct the cost of vaccines when calculating Employee's "net collected receipts." Thus, the court concluded that Employer should not have deducted the cost of vaccines from Employee's compensation.

In particular, the court determined that 49% of Employee's "net collected receipts" equaled $207,994.23.[8] In calculating Employee's damages, the court subtracted $13,147—the cost of her medical malpractice insurance premium—and the $135,000 salary and the $2,468.55 Employer paid Employee from $207,994.23, and added $245.[9] The court, thus, determined that Employer owed Employee $57,623.68 in compensatory damages. The court also determined that Employer had a good faith basis for withholding payment.

Both parties filed Post-Trial Motions. On February 28, 2018, the court heard argument on the Motions. On April 11, 2018, the court denied

_____

[8] $207,994.23 is 49% of Employee's total receipts of $424,478.03.

[9] $245 is equal to 49% of the $500 in co-pays Employee generated from 25 vaccines administered on October 31, 2010.

Employer's Motion. The next day, the court denied Employee's Motion for additional compensatory and liquidated damages, but granted the Motion insofar as Employee sought statutory attorney's fees.[10] The court molded the verdict to include the fees and entered Judgment of $111,170.89.

These cross-appeals followed. Both parties and the trial court complied with Pa.R.A.P. 1925.

Employee raises the following issues on appeal:

1. Did the lower court miscalculate the compensatory damages to which [Employee] is entitled in view of [Employer's] mistakes and admissions?

2. Did [Employer] fail to carry its burden of proving, by clear and convincing evidence, that it withheld payment of [Employee's] compensation in good faith?

3. Did the lower court err in denying [Employee's] timely motion to join [Dr. Weiser] individually, as an additional defendant?

Employee's Brief at 4.

Employer raises the following issues on appeal:

1. Did the trial court err as a matter of law by concluding that the contractual term, "net collected receipts," is ambiguous?

2. Did the trial court err as a matter of law by interpreting the contractual term, "net collected receipts," to preclude deducting the medical practice's cost of purchasing vaccinations from [Employee's] compensation?

3. Did the trial court err in determining as a factual matter—based solely on [Employee's] unsubstantiated, conflicting, and imprecise testimony—that she was not compensated for administering "at least twenty-five" H1N1 flu vaccines on October 31, 2009?

---

[10] The parties stipulated to fees of $53,547.21.

- 7 -

Employer's Brief at 6.

Employee's first issue challenges the trial court's calculation of her compensatory damages. When reviewing a trial court's decision after a non-jury trial, our standard of review is well-established. "We may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record. As fact finder, the judge has the authority to weigh the testimony of each party's witnesses and to decide which are most credible." *Parker Oil Co. v. Mico Petro and Heating Oil, LLC*, 979 A.2d 854, 856 (Pa. Super. 2009) (citation omitted). The trial judge's findings must be given the same weight and effect as a jury verdict and will not be disturbed on appeal unless they are not supported by competent evidence in the record. *Levitt v. Patrick*, 976 A.2d 581, 589 (Pa. Super. 2009). "Furthermore, our standard of review demands that we consider the evidence in the light most favorable to the verdict winner." *Id.* (citation omitted).

Employee claims that the trial court underestimated the amount of compensatory damages owed to her. In support of her claim, she argues that the court erred in disregarding Employer's admission that, with respect to accounting for the payment of Employee's malpractice insurance premium, Employer mistakenly subtracted the cost of the premium **after** applying the 49% factor to Employee's total receipts of $424,478.03. Employee's Brief at 18-20. Employee claims that Employer should have subtracted the cost of Employee's premium **before** applying the 49% factor, as she alleges

Employer admitted.[11] *Id.* She avers that this mistake resulted in a diminution in her compensatory damages of nearly $6,700.[12]

Employee's issue requires this Court to interpret the contract between the parties. "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Ragnar Benson, Inc. v. Hempfield Tp. Mun. Authority*, 916 A.2d 1183, 1188 (Pa. Super. 2007) (citation omitted). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision." *Id.* (citation omitted).

Our Supreme Court has set forth the principles governing contract interpretation as follows:

> The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. In cases of a written contract, the intent of the parties is the writing itself. Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is

---

[11] Employee also argues in her Brief that Employer erroneously deducted its vaccines cost from Employee's compensation. Employee's Brief at 16-17. The trial court, however, decided this issue in Employee's favor. Thus, we do not consider it here.

[12] Employee asserts that she is entitled to an award of $64,313.65 instead of $57,623.68.

ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact.

*Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468-69 (Pa. 2006) (citations omitted).

With respect to whether the terms of the Contract required Employer to subtract its payment of Employee's medical malpractice insurance premium before or after it applied the 49% factor to Employee's net collected receipts, the Contract provides that Employee's salary in the third year will be the greater of $135,000 and "49% of your net collected receipts with the cost of malpractice deducted." Contract at 1. The trial court concluded that the plain and ordinary meaning of this term meant "the cost of malpractice insurance should be deducted from [Employee's] 49% portion of her net collected receipts," *i.e.* deducted **after** applying the 49% factor. Trial Ct. Op., 6/14/18, at 10. In so concluding, the trial court noted that it found Dr. Weiser's testimony that the parties had agreed that the cost for Employee's malpractice insurance should be deducted from Employee's 49% portion of her net collected receipts credible and consistent with the plain language of the Contract.

We agree with the trial court's interpretation of the plain language of the Contract. Following our review, we conclude, as the trial court did, that the ordinary meaning of the phrase "49% of your collected receipts with the cost of malpractice insurance deducted" means that the cost of Employee's malpractice insurance should be deducted **after** calculating her portion of net

collected receipts. This interpretation is in conformance with the unambiguous language of the Contract and ensures that Employee—who testified that she would have been "fine either way"—is wholly responsible for payment of her own malpractice insurance. Employee is, thus, not entitled to relief on this claim.

Employee also faults the trial court for failing to treat Employer's Answer to Paragraph 16 of her Amended Complaint as a deemed admission under Pa.R.C.P. 1029(a) and (b). Employee's Brief at 21. Employee avers Employer failed to deny with specificity Employee's allegation that Employer did not pay Employee her share of not less than $28,646.81 representing additional receipts generated after the end of the Contract term. *Id.* at 21-23. Employee claimed that her total compensatory damages amounted to $80,744.96. *Id.* at 24. Employee alleges that Paragraph 16 did not, as averred by Employer, constitute a conclusion of law, but rather a factual allegation that required Employer's specific denial.

"[T]he interpretation and application of a Pennsylvania Rule of Civil Procedure presents a question of law." ***Barrick v. Holy Spirit Hosp. of the Sisters of Christian Charity***, 32 A.3d 800, 808 (Pa. Super. 2011) (citation omitted). Therefore, "our standard of review is *de novo*, and our scope of review is plenary." ***Id.***

Pa.R.C.P. 1029 governs denials in pleadings, and the effect of the failure to deny allegations. ***See*** Pa.R.C.P. 1029. Rule 1029 provides, in relevant part, as follows:

> (a) A responsive pleading shall admit or deny each averment of fact in the preceding pleading or any part thereof to which it is responsive. A party denying only a part of an averment shall specify so much of it as is admitted and shall deny the remainder. Admissions and denials in a responsive pleading shall refer specifically to the paragraph in which the averment admitted or denied is set forth.
>
> (b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivisions (c) and (e) of this rule, shall have the effect of an admission.

Pa.R.C.P. 1029(a), (b).

In Paragraph 16 of her Amended Complaint, Employee alleged that "[b]egining May 25, 2010, [Employer] collected additional receipts on account of professional services rendered by [Employee] while employed by [Employer] under the Contract but has failed to pay [Employee] such additional sum to which [Employee] is entitled under the Contract, said additional receipts being an amount not less than $28,464.81, 49% of which is $13,947.76." Amended Complaint, 9/4/14, at ¶ 16. Employer's Answer to Paragraph 16 stated that "[t]he averments of this Paragraph are a legal conclusion which is denied." Answer, 11/14/14, at ¶16.

Before we reach the merits of this claim, we must determine whether Employee has preserved it for our review. The record reflects that Employee has failed to cite to the place in the record where she presented this specific issue to the trial court, and our review does not disclose that she has preserved it for appellate review. As noted by the trial court, Employee did not preserve this issue in her written Post-Trial Motion. Accordingly, Employee

- 12 -

may not raise this issue for the first time on appeal. *See* Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal[]"); Pa.R.A.P. 2117(c) (requiring citation to place in record where issue has been preserved); *L.B. Foster Co. v. Lane Enterprises, Inc.*, 710 A.2d 55, 55 (Pa. 1998) ("If an issue has not been raised in a post-trial motion, it is waived for appeal purposes) (memorandum opinion). Thus, Employee has waived her claim that the court erred in failing to deem Employer's answer to Paragraph 16 of her Amended Complaint an admission.

In her second issue, Employee claims that court erred in not awarding her liquidated damages under the WPCL alleging that Employer failed to prove by clear and convincing evidence that it withheld payment of Employee's compensation in good faith. Employee's Brief at 31. In support of this claim, Employee cites, among other things, Employer's failure to advise her that vaccine vendors had granted Employer credits, Employer's attempt to retain fees earned by Employee during the contract term, and the trial court's finding that Weiser was not credible. *Id.* at 26, 29-30. Employee further avers that Employer waived a "good faith" defense by failing to raise it in its Answer and New Matter, Pre-Trial Settlement Conference Statement, or at trial. *Id.* at 26-27. Last, Employee claims she is entitled to pre-judgment interest and statutory post-judgment interest. *Id.* at 31-32.

Under the WPCL, a plaintiff is entitled to liquidated damages "equal to twenty-five percent (25%) of the total amount of wages due, or five hundred

dollars ($500), whichever is greater." 43 P.S. § 260.10. However, a plaintiff is only entitled to said damages if "no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment." ***Id.***

A defendant must prove good faith by clear and convincing evidence. ***Hartman v. Baker***, 766 A.2d 347, 354 (Pa. Super. 2000). "[M]ere bad judgment is not bad faith . . . mere bad judgment does not prevent an employer from acting in good faith under the WPCL." ***Braun v. Wal-Mart Stores, Inc.***, 24 A.3d 875, 964 (Pa. Super. 2011).

The trial court found by clear and convincing evidence that Employer was acting in good faith when it withheld payment to Employee. Trial Ct. Op. at 11. The following facts informed the court's decision: (1) Weiser's credible testimony that she believed that although vaccines were not mentioned in the Contract, the expense was inferred as a "common cost of doing business;" (2) Weiser's credible testimony that she believed that by not deducting the cost of vaccines in calculating the net collected receipts, she would lose money every time Employee administered a vaccine; and (3) the cost of vaccines is unique because it is the largest category of expenses besides salary and benefits that can be attributed to a specific physician. ***Id.*** at 11-12.

The trial court's findings are supported by competent record evidence. Thus, this claim lacks merit. ***See Levitt***, 976 A.2d at 589; ***Englert v. Fazio Mech. Servs., Inc.***, 932 A.2d 122, 126 ("The trial court's [determination]

- 14 -

that [the appellant] made a good faith effort . . . is a factual matter within its sound discretion.").

We are likewise unpersuaded by Employee's claim that Employer waived a "good faith" defense by not raising it in its Answer and New Matter. With respect to this claim, the trial court aptly noted that Employee failed to present any authority in support of her claim that "'good faith" is an affirmative defense which must be pleaded in a responsive pleading under the heading "New Matter" or raised in its pre-trial memorandum." Trial Ct. Op. at 12. Contrary to Employee's assertion, an employer does not waive a "good faith" defense where it pleaded "a good faith right to set-off or counter-claim[.]" *Hirsch v. EPL Tech., Inc.*, 910 A.2d 84, 93 (Pa. Super. 2006). *See also* 43 P.S. § 260.10.

Here, Employer filed a Counterclaim against Employee claiming that Employee had breached the Contract. Employer diligently pursued this claim until trial and withdrew it at trial only because Employer "believed that [Employee] failed to carry her burden on her claims." Employer's Responsive Brief at 17. Accordingly, our review of the record reveals that Employer did not waive its defense that it acted in good faith when it withheld payment from Employee. Employee is, thus, not entitled to relief on this claim.

Employee next claims that the court erred in refusing to award her pre-judgment interest and statutory post-judgment interest. Employee's Brief at 31-33. With respect to her allegation of error regarding the award of pre-judgment interest, we find that Employee has waived this claim because she

did not include it in her Pa.R.A.P. 1925(b) Statement. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Similarly, we find that Employee waived her claim for post-judgment interest by not raising this issue in her Post-Trial Motion. **See L.B. Foster Co.**, 710 A.2d at 55.

In her final issue, Employee avers that the trial court erred in denying her May 15, 2014 Motion to Amend Complaint to join Weiser as an additional defendant in her WPCL claim.[13, 14, 15] Employee's Brief at 33. In support of this claim, Employee explains that the WPCL permits suit against a corporate officer who takes an active role in decision-making. **Id.** at 34. She, therefore, concludes that, as the president and sole shareholder of Employer, "it is self-evident [that] Weiser, individually is subject to liability to [Employee]." **Id.**

_____

[13] In her Brief, Employee discusses Pa.R.C.P. 2252—"Right to Join Additional Defendants"—in support of her claim. Rule 2252 is inapplicable to the instant case, however, as the relief requested by Employee, and denied by the court, was in the nature of permission to amend the Complaint pursuant to Pa.R.C.P. 1033.

[14] In this Motion, Employee also sought leave to amend the Complaint to add additional damages. The court granted Employee's request to amend the Complaint, but denied her request to add Weiser as an additional defendant.

[15] On May 16, 2014, Employee filed an Emergency Motion requesting, on an expedited basis, the same relief sought in the Motion to Amend and Join filed the previous day. In the Emergency Motion, Employee alleged that the statute of limitations would expire two weeks hence, on May 30, 2014. Employer disputed Employee's contention that the statute of limitations was set to expire on May 30, 2014, and instead represented that the statute of limitations had expired one year earlier, on May 31, 2013.

***See also*** Memorandum of Law in Support of Motion to Amend, 5/15/14, at 3. Employer argued in opposition that the statute of limitations had expired, that Employee's failure to exercise reasonable diligence prejudiced Weiser, and that the WPCL intended the individual liability of corporate managers to be contingent on the corporation's inability to pay its debts, and there is no indication here that Employer will be unable to pay its debts. Employer's Brief in Opposition, 6/4/14, at 3-7.

We review the decision of the trial court to deny a motion to amend a complaint for an abuse of discretion. ***Ferraro v. McCarthy-Pascuzzo***, 777 A.2d 1128, 1132 (Pa. Super. 2001). We will not disturb the trial court's determination absent an abuse of that discretion. ***Id.***

Pa.R.C.P. 1033 provides, in relevant part, that a party may, at any time either with consent of the adverse party or with leave of court, add a person as a party. Pa.R.C.P. 1033. However, a plaintiff may not add a new defendant after the statute of limitations has run. ***Anderson Equip. Co. v. Huchber***, 690 A.2d 1239, 1241 (Pa. Super. 1997).

As a prefatory matter, we note that in her Brief, Employee has limited her argument to the propriety of amending her WPCL claim to include Weiser as a defendant, and has not set forth any argument pertaining to the denial of her request to amend her Breach of Contract claim. Thus, we address only the trial court's denial of Employee's Motion to Amend Complaint only as to the WPCL claim raised therein.

In denying the Motion, the trial court explained that the statute of limitations on Employee's WPCL claim had run almost one year earlier. Trial Ct. Op., 2/28/19, at 4. In particular, the trial court found as follows:

The employment contract that is the subject of this dispute terminated on May 31, 2010. [Employee] alleged in the original [C]omplaint that wages remain unpaid from the "regularly scheduled payday of [Employee] which occurred in May, 2010." [] All remuneration contemplated thereunder which had not already been paid became due and owing on that date or within 15 days thereafter pursuant to 43 P.S. § 260.3. The WPCL provides that "[n]o administrative proceedings or legal action shall be instituted under the provisions of this act for the collection of unpaid wages or liquidated damages more than three years after the day on which such wages were due and payable. . . . 43 P.S. § 260.9a(g). Hence, the statute of limitations for a WCPL claim under the subject employment [Contract] expired no later than June 15, 2013.

*Id.* at 3-4.

Because the statute of limitations had run at the time Employee sought to amend the Complaint, and a plaintiff may not add a new defendant after the statute of limitations has run, we find no error in the trial court's order denying Employee's Motion to Amend Complaint to join Weiser as an additional defendant.

**Employer's Appeal**

Employer's first two claims are interrelated. Therefore, we address them together. In its first issue, Employer claims that the trial court erred in finding the Contract term "net collected receipts," as it pertained to the allocation of the cost of vaccines administered by Employee, ambiguous simply because the Contract did not define it and the parties offered two

different interpretations of it. Employer's Brief at 16-17. Employer emphasizes that the "mere existence of differing contractual interpretations by contracting parties does not render a contract ambiguous." *Id.* at 17 (quoting *Krizovensky v. Krizovensky*, 624 A.2d 638, 643 (Pa. Super. 1993)). Employer suggests that, rather than "prematurely conclude" that an ambiguity existed, the court should have consulted the dictionary to understand the plain meaning of "net collected receipts." *Id.* at 17-18. Had the court done so, Employer concludes that the court would have "recognized that the distinct and substantial 'expense' the medical practice incurred by pre-purchasing vaccines out-of-pocket clearly should be excluded from 'net collected receipts.'" *Id.* at 18.

Relatedly, in its second issue, Employer claims that the court's interpretation of "net collected receipts" was unreasonable because it was contrary to the weight of the evidence elicited at trial and the established rules of contract construction. *Id.* at 18-19, 21-22. In particular, Employer alleges that the trial court "made no attempt . . . to weigh the extrinsic evidence to discern the most reasonable, probable, and natural interpretation of 'net collected receipts.'" *Id.* at 20. Employer argues that, in adopting Employee's "extreme and implausible" interpretation of "net collected receipts," the court erroneously excluded one of Employer's "largest identifiable and attributable expense outlays" from Employee's compensation calculation. *Id.* at 20. Employer also alleges that the court erred in construing this term against Employer as the drafter. *Id.*

As noted **supra**, it is well-settled that "[a]contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." **Insurance Adjustment Bureau, Inc.**, 905 A.2d at 468-69. "A contract is not ambiguous if the court can determine its meaning without any guide other than knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." **Trombetta v. Raymond James Fin. Servs., Inc.**, 907 A.2d 550, 562 (Pa. Super. 2006). "A contract is not rendered ambiguous by the mere fact the parties do not agree on the proper construction." **Id.** "It is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous." **Tuthill v. Tuthill**, 763 A.2d 417, 420 (Pa. Super. 2000) (citations omitted).

Instantly, the parties offered the trial court two differing definitions of "net collected receipts." Employee suggested that the term meant simply the amount of money actually collected by Employer from insurance companies and from patient co-pays. Employer interpreted the term to mean the amount of money Employer collected from insurance companies and patients, less the cost of vaccines purchased by Employer and other expenses. The trial court found that it was unable to ascertain the definition of "net collected receipts" from the Contract's plain language. Thus, the term "net collected receipts" was ambiguous as a matter of law, and, the court construed it against Employer to exclude Employer's vaccine costs from the calculation of Employee's compensation. Trial Ct. Op., 6/14/18, at 6-7.

- 20 -

In particular, it explained as follows:

The subject [Contract] never explicitly defines the term "net collected receipts." There is no mention of what is to be deducted from receipts to obtain the amount of net collected receipts. In particular, there is no mention of vaccines anywhere in the [Contract]. . . .

The term "net collected receipts" could mean the net amount collected from the insurance company from the amount actually billed, or it could imply deductions of unspecified expenses. [] Weiser testified that many categories of expenses do not figure in the "net" calculation because they are not easily discernable in terms of which doctor is responsible for which expenses. The selection of which costs, if any, were to be deducted in calculating [Employee's] net collected receipts is not clear in the [Contract] and disputed by the parties. Since the [Contract] did not define how "net collected receipts" should be calculated, the indefiniteness of the term rendered it susceptible to different construction.

*Id.* at 6-7.

In sum, the trial court found that: (1) the parties presented two competing interpretations of the definition of "net collected receipts"; and (2) the court was unable to determine its meaning from the plain language of the Contract. Given this, we agree with the trial court that the term "net collected receipts" is ambiguous.

Employer also suggests that had the court simply consulted a dictionary to ascertain the definition of "net" it would have concluded that the term is unambiguous. We agree with the trial court that this contention lacks merit. The court considered this argument, but found that the Black's Law Dictionary definition of "net"—"[c]lear of anything extraneous; with all deductions, such as charges, expenses, discounts, commissions, taxes, etc.; free from

expenses"—"is not precise enough to interpret the [Contract] when considering [Weiser's] own testimony that one unspecified category of expenses (cost of vaccines) was included in the [Contract] and not other expenses." *Id.* at 7 (citing Black's Law Dictionary, 10th ed. 2014).

With respect to Employer's claim that the court erred in construing the Contract against it, the court explained that it reached its conclusion that "'net collected receipts' was intended to have a meaning consistent with [Employee's] testimony" based primarily on its review of the extrinsic evidence, including Employee's and Weiser's testimony. Trial Ct. Op., 6/14/18, at 7-8. It noted that the fact that Weiser drafted the Contract was "merely an additional reason to interpret the [Contract] against" Employer. *Id.* at 8.

Because the court appropriately concluded that the term "net collected receipts" is ambiguous," as the fact-finder, it properly considered extrinsic evidence, including the testimony of the parties as to their understanding of the meaning of the term. The trial court's findings are supported by the competent evidence of record. Accordingly, Employer is not entitled to relief on these claims.

In its final issue, Employer claims the trial court erred in determining that Employee administered at least 25 H1N1 flu vaccines on October 31, 2009, for which Employer did not compensate her. Employer's Brief at 25. Employer characterizes Employee's testimony about this allegation variously as "mistaken and conflicting," "uncertain, unsubstantiated, and conflicting,"

and undermined by her failure to present any documentary evidence in support. *Id.* at 26, 28. Essentially, Employer challenges the weight the trial court gave to Employee's testimony.

This court will not substitute its assessment of credibility for that of the finder of fact. *Commonwealth v. Manley*, 985 A.2d 256, 262 (Pa. Super. 2009). The trial court's denial of a weight claim is the least assailable of its rulings. *Commonwealth v. Diggs*, 949 A.2d 873, 879-80 (Pa. 2008). *See Commonwealth v. Morgan*, 913 A.2d 906, 909 (Pa. Super. 2006) (stating that because the trial court is in the best position to view the evidence presented, an appellate court will give that court "the utmost consideration" when reviewing its weight determination).

Here, the trial court found that Employee "testified credibly regarding at least twenty-five H1N1 flu vaccines that she administered on October 31, 2009." Trial Ct. Op., 6/14/18, at 8 (internal quotation marks omitted). It explained that the credible record evidence supported its finding that Employee was uncompensated for the patient co-pays received by Employer for administering those vaccines. *Id.* Employer asks us to reweigh the evidence and the trial court's credibility determination and reach a different conclusion. We cannot and will not do so. Accordingly, this claim also fails.

Judgment affirmed.

Judge Panella joins the memorandum.

Judge Kunselman files a Concurring and Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/27/19</u>